# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2012

Lyle W. Cayce
Clerk

Nos. 08-51163, 10-50688

UNION ASSET MANAGEMENT HOLDING A.G.,

Plaintiff - Appellant

v.

DELL, INC.; KEVIN B. ROLLINS; JAMES M. SCHNEIDER; MICHAEL DELL,

Defendants - Appellees

STEVEN G. SCHULEMAN, M.D; TRAVIS COX; GEORGE SIBLEY; JOANN F. BROOKS; ST. STEPHEN, INCORPORATED; SMOKESTACK LIGHTNING LIMITED; CLASS MEMBERS AND OBJECTORS BRIAN F. MURPHY REV TRUST; THE RAYMOND M. MURPHY REV TRUST; KATHARINE M. ALTHANS,

Appellants

v.

UNION ASSET MANAGEMENT HOLDING A.G.,

Plaintiff–Appellee

DELL, INC.;  KEVIN B. ROLLINS; JAMES M. SCHNEIDER; MICHAEL DELL,

Defendants–Appellees

Appeals from the United States District Court
for the Western District of Texas

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court certified a class and approved a class-action settlement. Two groups of objectors to the settlement now appeal, claiming numerous deficiencies in the proceedings below. Reviewing for abuse of discretion, we find appellants' claims lack merit. We affirm.[1]

## I.

Plaintiffs, Union Management Holding A.G. ("Union") and other owners of Dell Inc. common stock, alleged that defendants, Dell and its officers ("Dell"), violated the Securities Exchange Act between May 2002 and September 2006 by fraudulently inflating reported revenues, engaging in erroneous accounting, and disseminating false information to the public. On October 7, 2008, the district court granted Dell's motion to dismiss, with prejudice,[2] and plaintiffs appealed.

While the appeal was pending, plaintiffs moved in the district court for class certification and approval of a proposed settlement agreement. The agreement proposed a $40 million settlement fund to be allocated among the class members and their attorneys. In December 2009, the district court preliminarily certified the settlement class, defined as "all persons who purchased or otherwise acquired the common stock of Dell Inc., directly or beneficially, between May 16, 2002 and September 8, 2006, inclusive, and who were damaged thereby." The court also preliminarily approved the proposed settlement, approved the proposed notice of the settlement to potential class members, and set a date for the fairness hearing. The class

---

[1] Because we affirm, the original merits appeal (No. 08-51163), which remains pending and has been consolidated with this appeal, is dismissed with prejudice, consistent with the parties' agreement in the Stipulation of Settlement.

[2] *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 913 (W.D. Tex. 2008).

notice explained that the proposed plan of allocation was still subject to court review and warned that the district court could approve the plan with modifications and "without further notice to Settlement Class Members." It also stated that "[a]ny Settlement Class Member who does not timely submit a Proof of Claim and Release within the time provided for shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund." The court directed a claims administrator to mail 1.7 million notices to potential class members and publish a summary notice in the *New York Times* and *Investor's Business Daily*. Appellants, Stephen G. Schuleman and others ("the Schuleman objectors") and Brian F. Murphy Rev Trust and others ("the Murphy objectors"), timely objected to the class certification and settlement agreement on numerous grounds.

On June 10, 2010, the district court certified the class and approved the settlement agreement over the appellants' objections. The court found that the proposed class, its representative (Union), its counsel, and the notice of settlement complied with Rule 23's requirements. The court also held that the settlement was fair, adequate, and reasonable to the class.

The court approved one modification to the plan of allocation in response to the objectors' most common complaint. It removed the "*de minimis* provision," which had required a potential recovery of at least ten dollars in order to receive a payout, and replaced it with a provision limiting each claimant to one check, negotiable within 60 days. The deadline for filing claims had passed one month earlier. The court did not require further notice to class members who were previously ineligible to recover because of the *de minimis* provision, nor did it reopen the claims period.

In the same order, the court awarded class counsel attorneys' fees with interest, using the percentage method to award fees of $7.2 million, or 18% of the settlement fund.

In the wake of the district court's order, the Schuleman and Murphy

objectors filed motions asking the district court to reconvene the fairness hearing, issue additional notice to the class, and extend the time for filing claims.  The district court denied those motions.

The Schuleman and Murphy objectors appeal separately.  The Schuleman objectors assert (1) that the court should not have approved the class certification and settlement agreement because the parties presented insufficient evidence, (2) that the settlement imposed undue burdens on small investors, (3) that the court should not have modified the plan of allocation, (4) that the court should have required that the class receive notice of the modified plan of allocation, (5) that the court should have moved the deadline for submitting claims after the modification, (6) that the court failed to provide the objectors with an opportunity to address evidence submitted after the fairness hearing, and (7) that the court erred in awarding attorneys' fees based on a percentage of the recovered fund as well as interest on those fees.  The Murphy objectors contend (8) that the class is improperly defined, (9) that the court should have reopened the claims period after it modified the plan of allocation, and (10) that the court erred in using the percentage method to calculate class counsel's fees.[3] In addition, on appeal, one of the appellees (Union) challenges the Schuleman and Murphy objectors' standing.

## II.

This Court reviews class certification for abuse of discretion.[4]  The Court also reviews the approval of a class-action settlement agreement for

---

[3] Two of the Schuleman objectors' claims (here, numbered 5 and 7) overlap with two of the Murphy objectors' (numbered 9 and 10, respectively).  This opinion will treat them together, in Sections III.F and III.H, respectively.

[4] *See Ordonez Orosco v. Napolitano*, 598 F.3d 222, 225 (5th Cir.), *cert. denied*, 131 S. Ct. 389 (2010).

abuse of discretion.[5]  Likewise, review of fee awards is for abuse of discretion.[6]
An abuse of discretion occurs only when all reasonable persons would reject
the view of the district court.[7]

## III.

### A. Standing

Union alleges that some of the appellants did not file a proof of claim,
thereby depriving them of standing to bring their objections.  Any class
member has standing to object to a class settlement.[8]  Filing a proof of claim
to the settlement fund is one way, but not the only way, for an objector to
demonstrate that he is a member of the class.[9]  Here, the settlement notice
instructed objectors how to establish class membership, and those
requirements, with which the appellants complied, did not demand that they
file a proof of claim.  The appellants have demonstrated their membership in
the class and therefore have standing to bring their objections.

### B. The Settlement's Adequacy, Fairness, and Reasonableness

To safeguard the interests of absent class members, district courts must
determine whether proposed class-action settlements are fair, adequate, and
reasonable.[10]  To do this in the Fifth Circuit, courts evaluate the six *Reed*
factors.[11]  In this case, the district court systematically analyzed the proposed

---

[5] *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir.), *cert. denied*, 543 U.S. 951 (2004).

[6] *See Welch v. Univ. of Tex.*, 659 F.2d 531, 535 (Former 5th Cir. 1981).

[7] *See Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995).

[8] *See Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002).

[9] *See Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579 (5th Cir. 2007) (unpublished) (per curiam).

[10] *See Ayers*, 358 F.3d at 368.

[11] The *Reed* factors are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

settlement under each factor and found that none counseled against approving the settlement. The objectors criticize the district court's assessment of only one of the six factors—"the stage of the proceedings and the amount of discovery completed"—based on the lack of formal discovery in the case. In considering this factor, courts must evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions."[12] Although the district court said it was "somewhat troubling" to approve the settlement "for claims which remain so shrouded in mystery," it did so for several reasons. First, it accepted class counsel's explanation that the Private Securities Litigation Reform Act (PSLRA) bars discovery while a motion to dismiss is pending.[13] Second, it noted that class counsel had conducted informal discovery by hiring private investigators and experts. Finally, it compared the agreement to other securities class-action settlements, found the parties "well informed about the merits of their respective positions," and observed that formal discovery is not a prerequisite to approving a settlement as reasonable.[14] For all of those reasons, the district court concluded that this *Reed* factor "weighs in favor of approval, if only slightly." The district court's rationale is thorough and persuasive. It does not constitute an abuse of discretion.

### C. The Class Definition

"[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[15] The class in this case is defined as "[a]ll persons who purchased or otherwise acquired the

---

[12] *Ayers*, 358 F.3d at 369.

[13] *See* 15 U.S.C. § 78u-4(b)(3)(B) ("[A]ll discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . .").

[14] *See Newby v. Enron Corp.*, 394 F.3d 296, 307 (5th Cir. 2004); *Cotton v. Hinton*, 559 F.2d 1326, 1332-33 (5th Cir. 1977).

[15] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam).

common stock of Dell Inc., directly or beneficially, between May 16, 2002 and September 8, 2006, inclusive, and were damaged thereby." The Murphy objectors assert that the "damaged thereby" language renders this definition improper. They argue that it makes class membership "not precise, objective, or presently ascertainable" and would lead to "mini-trials" on the merits to determine whether Dell's alleged securities fraud has in fact caused damage to each claimant.

In fact, the "damaged thereby" language is routine in class definitions,[16] and no court has found it to be problematic.[17] A New York district court held that the phrase "damaged thereby" is "superfluous," merely conveying a basic standing requirement.[18] The "damaged thereby" term is likewise no cause for concern in this case. The Murphy objectors' worry about individualized "mini-trials" is misplaced. Potential class members incurred the alleged damages just by holding stock, and a "quick look at [the] trading records" is all that is required to determine whether someone did so.[19] It is a mechanical and objective standard, in no way an individualized "causal" determination on the merits. The district court did not abuse its discretion in certifying the class as defined.

### D. Whether Small Investors Are Unduly Burdened

The Schuleman objectors argue that the claims-making process was biased toward large investors. All investors were required to submit documentation verifying their claims, but the Schuleman objectors complain that "the larger investors are relieved of the burden imposed on the smaller

---

[16] *See, e.g.*, *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 n.2 (5th Cir. 2005).

[17] *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 02 CIV. 5575, 2006 WL 903236, at *16-17 (S.D.N.Y. Apr. 6, 2009); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340-41 (S.D.N.Y. 2005).

[18] *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 492 (S.D.N.Y. 2009).

[19] *Id.*

investors to produce supporting documentation that they must first obtain from a third party," most likely a broker.  As the claims administrator explains, there is a good reason for this: "Because institutional investors often execute their own trades and do not necessarily use a brokerage house to do so, a signed letter or affidavit from an institution is often the equivalent of an individual submitting a letter from a broker.  In both cases, the underlying point is to obtain documentation from a person who has professional knowledge that claimed trades were, in fact, executed."  There is no difference in standard for large versus small investors, and the alleged burden of "obtain[ing] records from a third party" is not undue.  The district court did not abuse its discretion in approving the settlement's claims-making process.

### E. The De Minimis Provision

Some objectors complained about the *de minimis* provision in the original plan of allocation, which established a minimum ten-dollar payout from the settlement fund.  Answering the objections, the plaintiffs and defendants agreed to replace the *de minimis* provision with an alternate one that would allow every class member to receive his or her pro rata share of the settlement fund, even if less than ten dollars, while preserving some of the cost-saving that the *de minimis* provision had afforded.  The district court approved that modification.

Some of the same objectors who requested the change now claim that "the District Court had no authority to rewrite the parties' settlement agreement."  This claim misunderstands the distinction between the settlement agreement and the plan of allocation.  The removal of the *de minimis* provision was an amendment to the plan of allocation, not to the stipulation of settlement that enshrines the parties' agreement to settle.  The parties erected a barrier between the plan and the stipulation so that any change to the plan would have no legal effect on the stipulation.  With the stipulation thus insulated, the plan of allocation was subject to modification

8

"without further notice," as set forth in the notice to class members. A change in the plan therefore gives no reason to reject the settlement, and the district court did not abuse its discretion in approving the elimination of the *de minimis* provision.

*F. Whether Additional Notice or Time To File Was Necessary*

The district court eliminated the *de minimis* provision on June 10, 2010, one month after the deadline for filing claims had passed. Under the new plan of allocation, class members who stood to receive less than ten dollars from the settlement were now eligible to recover. The court nevertheless refused to reissue notice to the class and did not reopen the claims-filing period, concluding that "[t]here is no justiciable basis to incur the additional expense and time to re-notice the class and re-open the time for claims to be filed." Both groups of objectors contend that this amounted to a violation of Rule 23 and due process.

There is persuasive support for the district court's judgment. First, during the filing period, class members did not know with certainty whether the *de minimis* provision would apply to them. The amount to be paid out per share depended on the total number of claims filed, something no class member could know during the filing period. Second, the notice explicitly informed the class members that (1) the plan of allocation was still subject to court approval, (2) the plan could be modified in a way that would affect their personal recovery, and (3) they would not necessarily receive notice of any such changes. The notice was sent to all potential class members, regardless of how much stock they owned, and warned that by doing nothing, they would give up their rights and get no payment. Finally, the objectors point to no cases requiring a second round of notice to class members, nor an extended filing deadline, when a plan of allocation is amended. For these reasons, the district court's decision not to reissue notice or reopen the filing period was not an abuse of discretion.

### G. Whether a Second Fairness Hearing Was Necessary

The Schuleman objectors contend that the fairness hearing was insufficient because they did not get to challenge documents filed after the hearing. Objectors have a right to be heard,[20] but a fairness hearing is not a full trial proceeding. The court does not need to "open to question and debate every provision of the proposed compromise," and it may "limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision."[21] The Sixth Circuit observed that "no court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement."[22]

In this case, the fairness hearing lasted over three hours, and the objectors presented argument and conducted cross-examination. Their request to "continue" the fairness hearing is based on two documents submitted after the fairness hearing: (1) class counsel's receipts for expenses and (2) a declaration of the claims administrator's vice president of operations. But "[a] district court is not required to hold a hearing on a motion for attorneys' fees in a class action,"[23] and there is even less reason to require one on receipts for attorneys' expenses. Furthermore, the Schuleman objectors were not entitled to live testimony and cross-examination of all declarants. A fairness hearing is not a trial. "Historically, courts have commonly relied on affidavits, declarations, arguments made by counsel, and

---

[20] *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

[21] *Id.*

[22] *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007).

[23] *In re High Sulfur Content Gasoline Prods. Liability Litig.*, 384 F. App'x 299, 301 (5th Cir. 2010) (per curiam) (unpublished).

other materials in the record without also requiring live testimony."[24]  The district court denied the objectors' request because, in its judgment, the objectors "were afforded full opportunity at the [fairness] hearing to present their objections and remedies."  They have presented no reason to conclude that this judgment was an abuse of discretion.

### H. The Fee Award

The objectors allege three problems with class counsel's $7.2 million fee award: (1) that the district court used the percentage method rather than the lodestar method in its calculation, (2) that the award was excessive, and (3) that the award included interest.

Fifth Circuit law requires that when reviewing an attorneys' fee award for abuse of discretion, this Court must determine whether "'the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.'"[25]

### 1. The Percentage Method Versus the Lodestar Method

In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number

---

[24] *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007).

[25] *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996) (quoting *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987)).  The *Johnson* factors are intended to ensure "a reasonable fee." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).  The twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

11

of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.[26]  The Fifth Circuit has never explicitly endorsed the percentage method for common fund cases,[27] and we are the only circuit yet to do so.[28]  Still, the Fifth Circuit has been "amenable to its use, so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable."[29]  Indeed, district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check,[30] and for some it is the "preferred method."[31]

Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.[32] It states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable

---

[26] In the Fifth Circuit, courts set the lodestar multiplier by applying the *Johnson* factors. *See Transamerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994).

[27] *See In re Combustion, Inc.*, 968 F. Supp. 1116, 1134 (W.D. La. 1997) ("The law of the Fifth Circuit as to which of the two methods should be employed in common fund cases is at best unclear.").

[28] *See Manual for Complex Litigation (Fourth)* § 14.121 (2004).  The U.S. Supreme Court has indicated, obliquely, that the percentage method is at least appropriate.  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *cf. Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-75 (11th Cir. 1995) (reading *Blum* as the Supreme Court's "acknowledgment" of the percentage method).  The Supreme Court has never spoken to the appropriateness or desirability of the lodestar method in common fund cases.

[29] *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007).

[30] *See, e.g., Klein v. O'Neal, Inc.*, Nos. 7:03-CV-102-D, 7:09-CV-94-D, 2010 WL 1435161, at *34 (N.D. Tex. Apr. 9, 2010) (collecting cases); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex. 2008); *Turner*, 472 F. Supp. 2d at 860 (collecting cases).

[31] *E.g., Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003).

[32] Beyond the securities context, another part of the reason is the influence of a 1985 Third Circuit Task Force report identifying numerous deficiencies in the lodestar method in common fund cases.  *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237 (1985); *see also* Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 GEO. J. LEGAL ETHICS 1453, 1456 (2005); *cf.* FED. R. CIV. P. 23(h) advisory committee's note ("[T]here is some variation among courts about whether in "common fund" cases the court should use the lodestar or a percentage method of determining what fee is reasonable. [Rule 23] does not attempt to resolve the question whether the lodestar or percentage approach should be viewed as preferable.").

percentage of the amount of any damages and prejudgment interest actually paid to the class."[33]  The percentage method also brings certain advantages.[34] The district court in this case selected it over the lodestar method in part because it allows for easy computation, it aligns the interests of class counsel with those of the class members, and it was the method Union chose in the retainer agreement.  The court found that "the percentage method is appropriate for this case, as long as the Court utilizes the familiar *Johnson* framework to ensure the fee awarded is reasonable."

The objectors argue that the lodestar method is the only way to calculate attorneys' fees in this Circuit.  They understandably point to the following sentence from a 2008 case: "This circuit requires district courts to use the 'lodestar method' to 'assess attorneys' fees in class action suits.'"[35] But that sentence overstates the case it quotes, which said that the Circuit "uses" the lodestar method rather than "requires" it,[36] did not involve a traditional common fund,[37] and implied that the percentage method might be proper in other circumstances.[38]  Moreover, the 2008 case, which was not a securities case, only addressed how to allocate a lump-sum attorneys' fee award among the plaintiffs' multiple attorneys rather than how to allocate a common fund

[33] 15 U.S.C. § 78u-4(a)(6); *see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

[34] *See* Walker & Horwich, *supra* note 32, at 1457 (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)) (noting that the percentage method is more predictable, encourages settlement, and reduces incentives to protract litigation).

[35] *In re High Sulfur Content Gasoline Prods. Liability Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (quoting *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)).

[36] *Strong*, 137 F.3d at 850.

[37] *Id.* at 848, 852.

[38] *Id.* at 852.

between class counsel and the class itself, as here.[39]  The fact is that the Fifth Circuit has never reversed a district court judge's decision to use the percentage method,[40] and none of our cases preclude its use.[41]

Given the Fifth Circuit's stance on choice of method, the district court did not abuse its discretion by using the percentage method with a meticulous *Johnson* analysis.  To be clear, we endorse the district courts' continued use of the percentage method cross-checked with the *Johnson* factors.[42]  We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations.

*2. Whether the award is excessive.*

Without citing law, the Schuleman objectors contend that the fee award of 18% is "excessive" because the case was dismissed prior to discovery.  The district court arrived at 18% by looking to class counsel's retainer agreement, which provided for a fee of 18% to 25% of any common fund.  Noting the lead plaintiff's sophistication, the district court held that the class counsel's requested 25% fee was "entitled to a presumption of reasonableness."  The court still opted to adjust the requested award downward to 18%, the lower end of the range in the retainer, reasoning that 18% compensated counsel while protecting the class's interests and accounting for the *Johnson* factors.

---

[39] *In re High Sulfur*, 517 F.3d at 227.

[40] *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 748 (S.D. Tex. 2008); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 967 n.15 (E.D. Tex. 2000).

[41] *See In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. MDL 888, 1994 WL 150742, at *4 (E.D. La. Apr. 13, 1994).

[42] Note that a *Johnson* cross-check in this Circuit may be more searching than the "lodestar cross-check" commonly referenced in other courts.  The basic lodestar calculation incorporates some but not all of this Circuit's *Johnson* factors.  (This Circuit's lodestar practice incorporates them all through the multiplier.  *See supra* note 26 and accompanying text.)

The court explicitly considered the amount and sources of discovery in reaching its decision, and the objectors concede that the district court "correctly used the *Johnson* factors to help determine a reasonable fee." That much of counsel's efforts were outside of formal discovery processes does not render them irrelevant. There is no basis here for concluding that the district court abused its discretion in setting the amount of attorneys' fees.

*3. Whether the district court erred in including interest in the fee award.*

The district court awarded class counsel interest "from the date such Settlement Fund was funded to the date of payment, at the same net rate the Settlement Fund earns." The Schuleman objectors contend that awarding interest on class counsel's fee had no "basis in law or fact." They cite no authorities to support that argument, and, contrary to it, district courts routinely award interest on attorneys' fees.[43] The Schuleman objectors have failed to persuade that the district court abused its discretion in awarding interest.

In short, none of the objectors' complaints about the attorneys' fee award constitutes an abuse of discretion.

## IV.

The district court's judgment is AFFIRMED, and the original merits appeal is DISMISSED with prejudice.

---

[43] *See, e.g.*, *In re Sterling Fin. Corp. Sec. Class Action*, MDL No. 1879, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) (collecting cases); *In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *23 (E.D. La Mar. 2, 2009).