# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31035

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2017

Lyle W. Cayce
Clerk

CANTU SERVICES, INCORPORATED, a Texas Corporation,

Plaintiff–Appellant,

v.

MELVIN LEE FRAZIER; RENEE ELLENDER ROBERIE, Individual and
Official Capacity; CURT EYSINK, Individual and Official Capacity; KEVIN
MONK, Individual and Official Capacity; JANELL BOSARGE, Individual
and Official Capacity; MARK S. MARTIN, Individual and Official Capacity,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:12-CV-1292

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Cantu Services, Inc. (Cantu) sued Renee Ellender Roberie, Curt Eysink,
Kevin Monk, Janell Bosarge, and Mark S. Martin (State Officials), among
others, asserting equal protection and due process claims pursuant to 42
U.S.C. § 1983. After the district court granted summary judgment in favor of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-31035

the State Officials, they moved for attorney's fees. The district court granted the motion, and Cantu appealed. We vacate and remand.

**I**

The State Officials are members of the Louisiana Workforce Commission (LWC), a state agency tasked, in pertinent part, with "coordinat[ing] and administer[ing] programs conducted by the state, or jointly with federal agencies, in the area of . . . blind services."[1] This case stems from their involvement in the administration of the Randolph–Sheppard Act (RSA),[2] which Congress enacted to provide economic opportunities for blind persons.[3] The RSA grants priority to blind persons licensed by a state agency in the selection of operators of vending facilities on federal property.[4] For larger, more complex vending facility operations, a food service company will often serve as a "teaming partner" to assist the licensed blind vendor.

For eleven years, Cantu was the teaming partner of Eugene Breaud, the licensed blind vendor at Fort Polk in Leesville, Louisiana. Breaud died before the contract term ended, but Cantu, at first alone and then with a temporary licensed blind vendor, continued to operate the vending facilities at Fort Polk. After the term ended, the LWC announced that it was seeking applications from licensed blind vendors for an anticipated new long-term contract to operate the Fort Polk vending facilities. In the announcement, the LWC stated that it would assist the selected vendor in choosing a teaming partner. The LWC selected Defendant Melvin Lee Frazier as its licensed blind vendor for the anticipated long-term contract. Frazier then notified Cantu through e-mail that Cantu was his choice for teaming partner.

---

[1] LA. STAT. ANN. § 36:301(B).

[2] 20 U.S.C. §§ 107-107e.

[3] *Id.* § 107(a).

[4] *Id.* § 107(b).

2

No. 16-31035

The LWC contacted Frazier to notify him that there would be a meeting to select the teaming partner.  Cantu, Blackstone Consulting, Inc. (Blackstone), and a third teaming-partner candidate gave presentations at the meeting.  The LWC contacted Cantu after the meeting to inform Cantu that the LWC did not acknowledge or approve of the e-mail confirmation sent by Frazier.  Blackstone was ultimately selected to be Frazier's teaming partner. Frazier and Blackstone, through the LWC, submitted a proposal to the federal government and obtained the long-term contract to operate the vending facilities at Fort Polk.  The LWC also notified Cantu that it would not use Cantu for a proposed "bridge contract," which would cover the period between the end of the latest contract extension of the previous long-term contract and the start of Frazier's contract term.

Cantu filed suit, asserting equal protection and due process claims against the State Officials in their official and personal capacities pursuant to 42 U.S.C. § 1983 and a state-law breach of contract claim against Frazier.  The State Officials moved to dismiss Cantu's claims on the basis that sovereign immunity applied to the claims asserted against them in their official capacities and that qualified immunity applied to the claims asserted against them in their personal capacities.  The district court denied the motion as to the claims asserted against the State Officials in their official capacities and declined to rule on the remainder of the motion at that time.  The State Officials appealed, and this court reversed, holding that sovereign immunity barred Cantu's claims asserted against the State Officials in their official capacities.[5]  Subsequently, the district court converted the State Officials' motion to dismiss into a motion for summary judgment and dismissed the claims asserted against the State Officials in their personal capacities.

---

[5] *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 343 (5th Cir. 2013).

3

No. 16-31035

Cantu moved for the district court to reconsider the summary judgment decision. The district court granted the motion because it "failed to give express notice to [Cantu] of its intent" to convert the motion. On reconsideration, the district court again held that the State Officials were entitled to summary judgment.

The claim against Frazier proceeded to trial, which terminated when the district court granted Frazier's motion for judgment as matter of law at the close of Cantu's case-in-chief. The district court entered final judgment, dismissing Cantu's suit in its entirety. The State Officials moved pursuant to 42 U.S.C. § 1988 for attorney's fees incurred because of the claims asserted against them in their personal capacities. The district court granted the motion, awarding $31,031.00 for the attorney's fees that the State Officials incurred after Cantu filed its motion to reconsider as well as for the attorney's fees incurred to dismiss Joseph Burton from the suit, another State Official whom Cantu named as a defendant but never served with a summons and a copy of the complaint. The district court stated that the attorney's fees were for "the frivolous claims brought forth by Cantu." Cantu appealed the summary judgment decision and the judgment as a matter of law, both of which this court has since affirmed.[6] Cantu now appeals the award of attorney's fees.

## II

We review awards of attorney's fees for abuse of discretion, reviewing "the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*."[7] "Due to the district court's superior knowledge of the facts and the desire to avoid appellate

---

[6] *Cantu Servs., Inc. v. Frazier*, No. 16-30094, 2016 WL 7396716, at *1 (5th Cir. Dec. 20, 2016).

[7] *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008).

No. 16-31035

review of factual matters, the district court has broad discretion in setting the appropriate award of attorney['s] fees."[8]

## A

Section 1988 provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."[9] Although § 1988 does not facially distinguish between prevailing plaintiffs and defendants, the "'different equitable considerations' at stake" dictate that different standards govern the award of attorney's fees depending on who prevails.[10]  Thus, while prevailing plaintiffs "'should ordinarily recover an attorney's fee' from the defendant,"[11] prevailing defendants are entitled to attorney's fees "only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation or that the plaintiff continued to litigate after it clearly became so."[12]  This latter standard insulates defendants from the monetary strain of "burdensome litigation having no legal or factual basis."[13] We generally consider whether the plaintiff "established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial"[14] to be "factors important to frivolity determinations."[15]

To contend that the district court abused its discretion by determining that Cantu's claims are frivolous, Cantu largely relies on a technical claim that

---

[8] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

[9] 42 U.S.C. § 1988(b).

[10] *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 419 (1978)).

[11] *Id.* (quoting *Christiansburg*, 434 U.S. at 416).

[12] *Mylett v. Jeane*, 910 F.2d 296, 299 (5th Cir. 1990).

[13] *Fox*, 563 U.S. at 833 (quoting *Christiansburg*, 434 U.S. at 420).

[14] *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

[15] *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).

the State Officials were not authorized to participate in the teaming-partner selection process.    This is so, Cantu argues, because federal regulation makes "[p]olicy formulation and implementation" for vocational rehabilitation services the non-delegable "responsibility of the designated State unit,"[16] of which Cantu contends the State Officials are not a part.    Cantu has also asserted that the State Officials are not part of the State Licensing Agency, a position that, as the district court noted, directly contradicted Cantu's complaint.

Cantu has not, however, asserted why these arguments matter.    In its complaint, Cantu alleged that the State Officials violated its Fourteenth Amendment equal protection and due process rights; it did not assert a claim based on a purported violation of a federal regulation.    Cantu's appellate briefing does not contain a single citation to an equal protection or due process case, nor does it contain any substantive argument beyond a reiteration of its allegations and causes of action and a conclusory assertion that it had a "good faith basis in alleging equal protection and due process violations by the State Officials."    We cannot conclude from these undeveloped assertions, an alleged regulatory violation, the page length of the district court's summary judgment decision, and the fact that the district court set deadlines for summary judgment briefing that the district court abused its discretion in determining that Cantu's claims are frivolous, as Cantu urges.    Cantu has not provided an adequate basis upon which we could determine that the district court abused its discretion.

Cantu has not argued that the district abused its discretion by determining that the attorney's fees incurred to dismiss Burton from the suit

---

[16] *See* 34 C.F.R. § 361.13(c).

were the result of Cantu's frivolous claims. Accordingly, we do not disturb the district court's ruling in this respect.[17]

## B

Section 1988 allows for the recovery of "a *reasonable* attorney's fee,"[18] which is derived through "a two-step method."[19] The first step is to calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work."[20] "In calculating the lodestar, '[t]he court should exclude all time that is excessive, duplicative, or inadequately documented.'"[21] "[T]here is a 'strong presumption' that the lodestar figure is reasonable."[22]

The second step is to assess the factors articulated in *Johnson v. Georgia Highway Express, Inc.*[23] to determine whether an adjustment to the lodestar is warranted.[24] Although "a district court must provide 'a reasonably specific explanation for all aspects of a fee determination,'"[25] the district court is not required "to recite or even mention the *Johnson* factors, so long as 'the record

---

[17] *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (per curiam) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

[18] 42 U.S.C. § 1988(b) (emphasis added).

[19] *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016).

[20] *Id.* at 392 (quoting *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010), *aff'd en banc*, 660 F.3d 841 (5th Cir. 2011) (reinstating the part of the panel opinion addressing attorney's fees)).

[21] *Id.* (quoting *Jimenez*, 621 F.3d at 379-80).

[22] *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 554 (2010).

[23] 488 F.2d 714, 717-19 (5th Cir. 1974) (setting forth the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

[24] *Combs*, 829 F.3d at 392.

[25] *Moench v. Marquette Transp. Co. Gulf-Inland,* 838 F.3d 586, 596 (5th Cir. 2016) (quoting *Perdue*, 559 U.S. at 558).

clearly indicates that the district court has utilized the *Johnson* framework as the basis for its analysis.'"[26]

In determining reasonable attorney's fees, the district court is not required "to achieve auditing perfection," as "[t]he essential goal in shifting fees (to either party) is to do rough justice."[27] District courts may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."[28] Indeed, as the Supreme Court has noted, there is hardly "a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it."[29] Nevertheless, a district court's discretion to set a reasonable attorney's fee, although broad, "is not unlimited."[30]

The district court determined that the "State Officials['] [counsel] charged an hourly rate of $130," which it stated is comparable to the rate in that community. As the State Officials admit, the average hourly rate charged by the attorneys for the State Officials' was not precisely $130, resulting in a slightly larger fee than the one actually incurred. But, as noted, we require rough justice, not auditing perfection, and the district court did not clearly err by determining that $130 is comparable to the rate in the community. The district court also listed the *Johnson* factors and specifically noted that the factors did not justify any alteration to the lodestar hourly rate, clearly indicating that the district court used the *Johnson* framework as the basis for its analysis.

---

[26] *Id.* (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012)).

[27] *Fox v. Vice*, 563 U.S. 826, 838 (2011).

[28] *Id.*

[29] *Id.*

[30] *Perdue*, 559 U.S. at 558.

Although Cantu has not asserted that the district court abused its discretion by awarding attorney's fees in connection with the motion to dismiss Burton, the State Officials have conceded that "it appears fees for litigat[ing] Joseph Burton's Motion to Dismiss should not have been awarded" because "Burton was not a party to the State Officials' motion for Attorney's Fees or this appeal." We accordingly vacate the award of attorney's fees and remand so that the district court may consider this in the first instance.

Because we are remanding, we do not consider Cantu's contention on appeal that the district court did not determine whether the number of hours recorded by attorneys for the State Officials was excessive or duplicative, nor do we consider Cantu's contention on appeal that the district court awarded attorney's fees incurred prior to Cantu's claims clearly becoming frivolous. On remand, we are confident that the district court will address these contentions and articulate "a reasonably specific explanation" for each aspect of the fee determination.[31]

## III

Cantu additionally appealed the district court's denial of its motion for review of the taxation of costs in favor of the State Officials and Frazier "solely" for the avowed "purpose[] of preserving for appeal the issue of whether" the State Officials and Frazier "are in fact prevailing parties." Because another panel of this court has affirmed the district court's summary judgment decision and judgment as a matter of law,[32] the district court did not err in denying Cantu's motion for review of the taxation of costs in favor of the State Officials and Frazier.

\*     \*     \*

---

[31] *Id.*

[32] *Cantu Servs., Inc. v. Frazier*, No. 16-30094, 2016 WL 7396716, at \*1 (5th Cir. Dec. 20, 2016).

## No. 16-31035

For the foregoing reasons, we VACATE and REMAND for proceedings consistent with this opinion.