W. EUGENE DAVIS, Circuit Judge:
This is an interlocutory appeal from the district court’s order certifying a class action and approving a settlement under Rule 23 of the Federal Rules of Civil Procedure.[1] The ongoing litigation before the district court encompasses claims against British Petroleum Exploration & Production, Inc. (“BP”) and numerous other entities. All these claims are related to the 2010 explosion aboard the Deepwater Horizon, an offshore drilling rig, and the consequent discharge of oil into the Gulf of Mexico.
Several of the original appellants in this case have moved to dismiss their appeals voluntarily, and we have granted those motions. We accordingly do not consider the arguments unique to those appellants. The three groups of appellants remaining before us — the “Allpar Objectors,” the “Cobb Objectors,” and the “BCA Objectors” — all filed objections with the district court opposing class certification and settlement approval based on various provisions of Rule 23. The Objectors’ arguments were each addressed and rejected by the district court in its order of December 21, 2012. The Objectors have now appealed the district court’s order and ask this court to remand with instructions to decertify the class and withdraw approval from the Settlement Agreement.
BP also now asks this court to vacate the district court’s order, although BP is not formally an appellant and, in fact, BP originally supported both class certification and settlement approval before the district court. In addition to its own set of new arguments under Rule 23, BP also raises additional arguments regarding the Article III standing of certain class members to make claims under the Settlement Agreement. Unlike the Objectors, however, BP argues that the Settlement Agreement can be salvaged if “properly construed and implemented.” In BP’s view, all of the problems that invalidate the class settlement under Article III and Rule 23 result from two Policy Announcements issued by the Claims Administrator, Patrick Juneau, who was appointed under the Settlement Agreement by the district court.
As set forth below, we cannot agree with the arguments raised by the Objectors or BP. The district court was correct to conclude that the applicable requirements of Rule 23 are satisfied in this case. Additionally, whether or not BP’s arguments regarding Exhibits 4B and 4C are correct as a matter of contract interpretation, neither class certification nor settlement approval are contrary to Article III in this case. Accordingly, the district court’s order is affirmed.
I.
The factual background of this case is described in more extensive detail in the district court’s opinion, In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010, 910 F.Supp.2d 891 (E.D.La.2012), and in a previous decision by a different panel of this court, In re Deepwater Horizon, 732 F.3d 326 (5th Cir.2013) (“Deepwater Horizon /”). As explained in Deepwater Horizon I, BP leased the Deepwater Horizon drilling vessel to drill its Macondo prospect off the Louisiana coast. On April 20, 2010, an *796 exploratory well associated with the drilling vessel blew out. After the initial explosion and during the ensuing fire, the vessel sank, causing millions of barrels of oil to spill into the Gulf of Mexico. Numerous lawsuits were filed against a variety of entities, and many of these lawsuits were transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.
To satisfy its obligations under the Oil Pollution Act (“OPA”), BP initially established its own claims process and later funded the claims process administered by the Gulf Coast Claims Facility (“GCCF”) in order to begin paying out claims immediately rather than at the conclusion of litigation. BP then began negotiating a class settlement in February 2011 and jointly worked with the Plaintiffs’ Steering Committee (“PSC”) to transfer claims from the GCCF to a program supervised directly by the district court.
On April 16, 2012, the PSC filed an Amended Class Action Complaint and a proposed Settlement Agreement for the district court’s preliminary approval. In accordance with the terms of the Settlement Agreement, the district court appointed Patrick Juneau as Claims Administrator of the settlement program. Although the Settlement Agreement had not yet received the district court’s final approval under Rule 23 of the Federal Rules of Civil Procedure, the Claims Administrator began reviewing claims left unresolved by the GCCF and processing new claims in June 2012 as provided for in Section 4 of the parties’ Settlement Agreement, entitled “Implementation of the Settlement.”
On August 13, 2012, after a preliminary hearing and the distribution of notifications to the absent members of the proposed class, BP and the PSC moved for final approval of the Settlement Agreement and certification of the class defined at paragraph 306 of the Amended Class Action Complaint. The Allpar Objectors, Cobb Objectors, and BCA Objectors all filed objections with the district court opposing class certification and settlement approval based on various provisions of Rule 23. After conducting a fairness hearing on November 8, 2012, to consider the views of these Objectors and numerous others in accordance with Rule 23(e), the district court issued a final order certifying the class and approving the parties’ Settlement Agreement on December 21, 2012. The district court emphasized in particular that the “uncapped compensation” available under the Settlement Agreement would “ensure that a benefit paid to one member of the class will in no way reduce or interfere with a benefit obtained by another member.”[2] The Objectors appealed.
BP supported the Settlement Agreement during the proceedings leading up to and including the district court’s order of December 21, 2012. BP now argues that two Policy Announcements issued by the Claims Administrator regarding the interpretation and application of the Settlement Agreement — both of which were adopted in orders by the district court — have subsequently brought the Settlement Agreement into violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution.
One of these two Policy Announcements by the Claims Administrator addresses the interpretation and application of the Settlement Agreement’s Exhibit 4C, entitled “Compensation Framework for Business Economic Loss Claims.” The Policy Announcement was endorsed on March 5, 2013, by the district court in an order that *797 became the subject of the appeal heard by Judges Dennis, Clement, and Southwick in Deepwater Horizon I. The Settlement Agreement’s Exhibit 4C establishes a formula for measuring the payments made to class members as compensation for business-related economic loss. The text of Exhibit 4C, however, does not explicitly identify the accounting methodology that the Claims Administrator should apply when interpreting this payment formula. BP argued before the other panel that the Claims Administrator’s interpretation of Exhibit 4C fails to reflect the parties’ intent to apply the accrual method of accounting, rather than the cash method, when evaluating the financial records of all prospective claimants. The PSC disagreed and argued that the cash method of accounting could also be used by the Claims Administrator if a prospective claimant ordinarily used the cash method in its own business accounting and bookkeeping.
After considering the parties’ arguments, a majority of the panel in Deep-water Horizon I remanded the case for further proceedings to reexamine the contractual interpretation questions arising under Exhibit 4C.[3] The district court issued an additional ruling on December 24, 2013,[4] which BP has appealed once again.[5]
The second Policy Announcement by the Claims Administrator addresses the interpretation and application of Exhibit 4B of the Settlement Agreement, entitled “Causation Requirements for Businesses [sic] Economic Loss Claims.” Whereas the Settlement Agreement’s Exhibit 4C established a formula for the measurement of economic loss, Exhibit 4B set forth criteria for prospective claimants to demonstrate to the Claims Administrator that their losses were caused by the Deepwater Horizon oil spill. In the Policy Announcement, the Claims Administrator explained:
The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement. Both Class Counsel and BP have in response to the Claims Administrator’s inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwa-ter Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.[6]
The record reflects that no party ever formally objected to this second Policy Announcement, and the district court adopted this Policy Announcement in an order docketed on April 9, 2013. That order was never independently appealed to this court. In the initial brief that BP filed in this appeal on August 30, 2013, BP took “no position on the relevance vel non ” of the second Policy Announcement with respect to the lawfulness of class certification and settlement approval in this case.
BP also has never suggested that the Claims Administrator was incorrect to *798 state that “[b]oth Class Counsel and BP have ... confirmed that [the second Policy Announcement] is in fact a correct statement of their intent and of the terms of the Settlement Agreement.” In fact, the record contains an e-mail message from Judge Barbier to a number of participants in this litigation documenting a “discussion” on December 12, 2012, during which it was confirmed that “Counsel for BP and the PSC agree with the Claims Administrator’s objective analysis of causation with respect to his evaluation of economic damage claims,” as set forth in the second Policy Announcement.[7] The record reflects no declared objection or disagreement with the district court’s e-mail. This e-mail was later cited in the district court’s order adopting the Policy Announcement on April 9, 2013.
In the supplemental brief that BP filed in this appeal on October 11, 2013, however, BP argued that the lawfulness of the Settlement Agreement was equally threatened by both Policy Announcements’ effects on the interpretation and application of Exhibits 4B and 4C. According to BP, both of these Policy Announcements by the Claims Administrator permit claimants without any actual injuries caused by the oil spill to participate in the class settlement and receive payments. According to BP, this result brings the class settlement into violation of Rule 23, the Rules Enabling Act, and Article III.
II.
Before we reach the questions regarding class certification and settlement approval under Rule 23, we must resolve the Article III question as a threshold matter of jurisdiction.[8] Questions of law relating to constitutional standing are reviewed de novo.[9] “Facts expressly or impliedly found by the district court in the course of determining jurisdiction are reviewed for clear error.” [10] “An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.”[11]
The abuse-of-discretion standard governs this court’s review of both the district court’s certification of the class and its approval of the settlement under Rule 23.[12] This court exercises de novo review as to whether the district court applied the correct legal standard.[13] Importantly, “Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.”[14]
III.
As explained in its supplemental brief, the crux of BP’s standing argument is that Article III “precluded] certification of a *799 settlement class that includes members that have suffered no injury” or “who suffered no harm caused by the Deepwater Horizon incident.” In BP’s view, because an unidentified number of such individuals have received and may continue to receive payments under the class settlement, Article III requires this court to reverse the district court’s order of December 21, 2012.
In two respects, BP is correct. First, the elements of Article III standing do indeed include both an injury in fact and a causal connection to the defendant’s conduct.[15] Second, under the previous decisions of this circuit, both of these elements must be present as a threshold matter of jurisdiction whenever a district court certifies a class under Rule 23.[16]
It is striking, however, that BP makes no attempt to identify a standard that we should apply to determine whether these elements are satisfied in this case. The frequent references in BP’s briefs to the “vast numbers of members who suffered no Article III injury” are disconnected from any discussion of pleading requirements, competent evidence, or the standards of proof by which the parties’ contentions are evaluated during different stages of litigation. In particular, BP’s arguments fail to explain how this court or the district court should identify or even discern the existence of “claimants that have suffered no cognizable injury” for purposes of the standing inquiry during class certification and settlement approval.
In the following sections, therefore, we review the law governing the standard applicable to Article III questions in the specific context of Rule 23, and then turn to examine the facts of the present ease. As explained below, although the relevant authorities suggest two possible approaches to Article III questions at the class certification stage, both of these approaches require us to reject BP’s standing argument. Whichever test is applied, therefore, Article III does not mandate reversal in this case.
A.
As the Supreme Court explained in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the elements of Article III standing are constant throughout litigation: injury in fact, the injury’s traceability to the defendant’s conduct, and the potential for the injury to be redressed by the relief requested. As Lujan emphasized, however, the standard used to establish these three elements is not constant but becomes gradually stricter as the parties proceed through “the successive stages of the litigation.” In Lewis v. Casey, 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court reaffirmed this formulation:
Since they are not mere pleading requirements, but rather an indispensable part of the plaintiffs case, each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the- manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant’s conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set *800 forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.[17]
Lujan and Lewis provide a useful blueprint, therefore, but do not comprehensively address all conceivable stages of litigation in which Article III standing may need to be addressed. This quoted passage does not' explain, in particular, how courts are to evaluate standing for the purposes of class certification and settlement approval under Rule 23.
In attempting to answer this question, courts have followed two analytical approaches. According to one approach, which has been endorsed by three Justices concurring in Lewis,[18] several circuits, and an influential treatise,[19] the inquiry hinges exclusively on the Article III standing of the “named plaintiffs” or “class representatives.” This test requires courts to ignore the absent class members entirely:
Unnamed plaintiffs need not make any individual showing of standing in order to obtain relief, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.[20]
In the years since Lewis, this approach to the standing inquiry during class certification has been followed by the Seventh,[21] Ninth,[22] and Third Circuits.[23] Additionally, the Tenth Circuit has adopted this test at least in “class action[s] seeking prospective injunctive relief’ and arguably also in class actions for damages as well.[24] As stated in a frequently cited decision by the Seventh Circuit, Kohen v. Pacific Investment Management Co. LLC, 571 F.3d 672, *801 677 (7th Cir.2009), it is “almost inevitable” that “a class will ... include persons who have not been injured by the defendant’s conduct[ ] ... because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.” According to Kohen, however, even this “inevitability” does not preclude Article III standing during the Rule 23 stage.[25]
Other circuit decisions have not necessarily ignored absent class members. According to these decisions, courts must ensure that absent class members possess Article III standing by examining the class definition. Importantly, however, this approach does not contemplate scrutinizing or weighing any evidence of absent class members’ standing or lack of standing during the Rule 28 stage. The most frequently cited formulation of this test is found in the Second Circuit’s decision in Denney v. Deutsche Bank AG, 443 F.3d 253, 263-64 (2d Cir.2006): “We do not require that each member of a class submit evidence of personal standing. At the same time, no class may be certified that contains members lacking Article III standing. The class must therefore be defined in such a way that anyone within it would have standing.”[26] The Eighth Circuit has also applied this test,[27] as have the Seventh[28] and Ninth Circuits,[29] despite both these latter circuits’ statements in other decisions that absent class members are irrelevant to the Article III inquiry.[30]
If this case actually required us to do so, it might not be a simple task to choose between the Kohen test and the Denney test based on this roughly even split of circuit authority.[31] It is also perhaps unclear whether our circuit has already adopted the Kohen test in Mims v. Stewart Title Guaranty Co., 590 F.3d 298 (5th Cir.2009). Citing Kohen, we stated in Mims that “[cjlass certification is not precluded simply because a class may include *802 persons who have not been injured by the defendant’s conduct.”[32] Although this particular statement was made in the context of analyzing Rule 23 rather than Article III, we elsewhere concluded in Mims that “[tjhere is no serious question that the plaintiffs have standing” after explicitly analyzing only “the named plaintiffs.”[33]
Judge Clement’s opinion in Deepwater Horizon I, however, did not mention Mims, distinguished Kohen on its facts, and instead applied the Denney test.[34] In Part II of her opinion, which Judge South-wick did not join and from which Judge Dennis dissented, Judge Clement explained that absent class members’ standing is indeed relevant to jurisdiction over a class action. She also agreed with Denney that absent class members’ standing should be evaluated based on how a class is “defined” and on whether the absent class members are “alleged” to have color-able claims.[35] As Judge Clement emphasized several times, when an absent class member is “unable to plead the causation element,” the absent class member’s “non-colorable claims do not constitute Article III cases or controversies.”[36] In Judge Clement’s view, if absent class members include persons who “concede” that they have no “causally related injury,” then a district court lacks jurisdiction to certify the class.[37] Judge Clement also agreed with Denney that Article III does not require a showing that an absent class member “can prove his case” at the Rule 23 stage, so long as the absent class member “can allege standing.”[38]
This case is not a vehicle, however, for us to choose whether Kohen or Denney articulated the correct test. Nor does this case require us to decide whether Mims has already adopted the Kohen test as a matter of Fifth Circuit law. For the purposes of the present ease, these questions are entirely academic because BP’s standing argument fails under both the Kohen test and the Denney test. As explained in the next section, both the named plaintiffs and the absent class members contemplated by the class definition include only persons and entities who can allege causation and injury in accordance with Article III.
B.
Looking first to the Kohen test for standing, it is clear that the class action in this case survives Article III because the named plaintiffs have each alleged injury in fact, traceability to the defendant’s conduct, and redressability by the relief requested.[39] The named plaintiffs set forth their allegations in the operative pleading in this case, the Amended Class Action Complaint for Private Economic Losses and Property Damages, which was filed with the district court on May 2, 2012.[40] The Amended Class Action Complaint ex *803 plains that “Plaintiffs are individuals and/or entities who have suffered economic and property damages as a result of the Deepwater Horizon Incident.”[41] This document thereafter identifies each of the fifteen named plaintiffs individually and explains in detail how each has suffered economic damages due to the “lack of adequate supplies of seafood to process and sell,” a “severe reduction in tourist-related bookings,” a drop in “demand for marine tourism,” “a loss on the sale of ... residential property,” and numerous other types of economic injury and property damage.[42]
Each one of these named plaintiffs satisfies the elements of standing by identifying an injury in fact that is traceable to the oil spill and susceptible to redress by an award of monetary damages. Under the Kohen test, that is the end of the inquiry. As explained in Cole v. General Motors Corp., 484 F.3d 717 (5th Cir.2007), which addressed the Article III standing of named plaintiffs during class certification under Rule 28, we found it “sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.”[43] At the Rule 28 stage, Cole provides that “a federal court must assume arguendo the merits of [each named plaintiffs] legal claim.”[44] Indeed, BP has never argued that any of the named plaintiffs lack Article III standing. Accordingly, there is no question that the Kohen test is satisfied in this case.[45]
Applying the Denney test to the definition of the class proposed for certification, we come to the same conclusion. The Class Definition is set forth in paragraph 306 of the Amended Class Action Complaint and is reproduced in its entirety in Appendix B of the district court’s order. Under the plain terms of the Class Definition, a “person or entity” is included “in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described” in Section 1.3.1 of the Class Definition. Of these “Damage Categories,” the only category that BP has identified as giving rise to Article III difficulties is the “Economic Damage Category” under Section 1.3.1.2.[46] This section of the Settlement Agreement, however, explicitly limits claims to those based on “[l]oss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT,” subject to exclusions for participants in certain industries.[47] As contemplated by the Class Definition, therefore, the class contains only persons and entities that possess Article III standing.
Even if the “definition” of the class were interpreted for the purposes of the Den-ney test to include the entire Amended Class Action Complaint, rather than just the provisions set forth in paragraph 306, the result would be no different. The Amended Class Action Complaint includes numerous allegations of injuries to the absent class members caused by the oil spill. For example, the sections of the Amended Class Action Complaint directed toward *804 the satisfaction of the Rule 23(a) requirements for numerosity, commonality, and typicality each emphasize causation and actual damages with respect to each member of the class:
The Class consists of tens of thousands of individuals and businesses that have been economically damaged by the spill.... Each Class member’s claim arises from the same course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove Defendants’ outrageous, willful, reckless, wanton, and deplorable conduct and liability.... The claims in this Second Amended Master Class Action Complaint are typical of the claims of the E & PD Class in that they represent the various types of non-governmental economic losses and property damage caused by the Deepwa-ter Horizon Incident.[48]
Accordingly, using Judge Clement’s formulation of the standard, the class in this case does not include any members who “concede” that they lack any “causally related injury.”[49] This ends the Article III inquiry under the Denney test, which does “not require that each member of a class submit evidence of personal standing”[50] so long as every class member contemplated by the class definition “can allege standing.” [51]
Our decision in Cole confirms that “it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered” because for each class member we “must assume arguendo the merits of his or her legal claim” at the Rule 23 stage.[52] Although Cole addressed the standing of named plaintiffs rather than absent class members, it would make no sense to apply a higher evidentiary standard to absent class members than to named plaintiffs. We also stated in In re Rodriguez, 695 F.3d 360, 370 (5th Cir.2012), that even the absent class members are ‘‘linked” under Rule 23 to the “common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership.” Whether the Kohen test or the Denney test is applied, therefore, we find that Article III and the Rules Enabling Act[53] are satisfied in this case.
*805 C.
In concluding this analysis, we note the possibility that the application of a stricter evidentiary standard might reveal persons or entities who have received payments under Exhibits 4B and 4C and yet have suffered no loss resulting from the oil spill. But courts are not authorized to apply such a standard for this purpose at the Rule 23 stage. Under Lujan and Lewis, of course, this is precisely what the district judge must do at summary judgment and what the finder of fact must do at trial.[54] Without ever saying so explicitly, BP implies that we should also resolve Article III questions at the Rule 23 stage by looking to evidence of certain prospective claimants’ standing. That is, BP cites to items of evidence — in particular, a series of declarations by economists, Henry H. Fishkind, A. Mitchell Polinsky, J. Richard Dietrich, and Hal Sider. These economists’ declarations, in BP’s view, demonstrate that the Claims Administrator has awarded payments under his interpretations of Exhibits 4B and 4C to persons and entities that likely were not injured by the Deepwater Horizon incident. It is unclear from BP’s submissions during this appeal whether BP asks us to evaluate this proof by applying a summary-judgment standard or a preponderance-of-the-evidence standard. Ultimately, we can do neither in this case.
With respect to the evidence cited by BP regarding these claimant’s standing, we emphasize two points. First, and most obviously, none of this evidence was ever considered by the district court prior to December 21, 2012, the date when the district court certified the class and approved the settlement.[55] The cited versions of these economists’ declarations were filed with the district court on March 20, 2013, and none of them is dated earlier than January 15, 2013. Even though standing is a jurisdictional matter, any “facts expressly or impliedly found by the district court” in the course of “making its jurisdictional findings” must be accepted on appeal unless they are clearly erroneous.[56] Additionally, under the settled law of this circuit, “an appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.” [57] We therefore cannot consider the economists’ declarations cited by BP or draw any conclusions from them.
Second, BP has cited no authority — and we are aware of none — that would permit an evidentiary inquiry into the Article III standing of absent class members during *806 class certification and settlement approval under Rule 23. It is true that a district court may “probe behind the pleadings” when examining whether a specific case meets the requirements of Rule 23, such as numerosity, commonality, typicality, and adequacy.[58] But the Supreme Court cautioned in Amgen Inc. v. Connecticut Retirement Plans & Trust Funds, — U.S.-, 133 S.Ct. 1184, 1194-95, 185 L.Ed.2d 308 (2013), that “Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.”
Relevant circuit authority confirms the inappropriateness of reviewing evidence of absent class members’ standing at the Rule 23 stage. Mims and Kohen suggest that such evidence is simply irrelevant, inasmuch as “[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant’s conduct.”[59] Denney and Judge Clement’s opinion in Deepwater Horizon I, for their part, also “do not require that each member of a class submit evidence of personal standing”[60] so long as the class is defined so that every absent class member “can allege standing.”[61] Our older decision in Cole confirms that it would be improper to look for proof of injuries beyond what the claimants identified in the class definition can “allege they have suffered” at this stage.[62] Despite BP’s urging, therefore, even a district court could not consider the evidence regarding absent class members’ standing at the Rule 23 stage.
Of course, had the class in this case been certified under Rule 23 for further proceedings on the merits rather than for settlement, the district court might ultimately have had occasion to apply a stricter evidentiary standard. As the district court said explicitly, “certain causation issues ... would have to be decided on an individual basis were the cases not being settled,” including “for example, the extent to which the Deepwater Horizon incident versus other factors caused a decline in the income of an individual or business.”[63] As early as October 6, 2010, the district court anticipated that “issues relating to damages” could and would be “severed and tried separately” from other issues relating to liability,[64] in accordance with this court’s previous case law[65] and Rule 23(c)(4).[66] In its submissions to the dis *807 trict court, BP also contemplated the possibility of “a trial of an economic damage test case” and “presentations of proof and comparative responsibility.”[67] Such proceedings would have provided opportunities for BP to inquire more deeply into individual claimants’ evidence of Article III standing under the applicable evidentiary standards described in Lujan and Lewis.[68] In the absence of any motion for summary judgment or trial predicated upon the Article III standing of those absent class members, however, it would be premature and improper for a court to apply evidentiary standards corresponding to those later stages of litigation.
Indeed, it would make no practical sense for a court to require evidence of a party’s claims when the parties themselves seek settlement under Rule 23(e). Logically, requiring absent class members to prove their claims prior to settlement under Rule 23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven. Such a rule would thwart the “overriding public interest in favor of settlement” that we have recognized “[p]articularly in class action suits.”[69] The legitimacy of class settlements is reflected not only in Rule 23(e) but also in the special regime that Congress has created to govern class settlements under 28 U.S.C. §§ 1711-15. Through the procedural mechanism of a class settlement, defendants “are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e).”[70] By entering into class-wide settlements, defendants “obtain[ ] releases from all those who might wish to assert claims, meritorious or not” and protect themselves from even those “plaintiffs with non-viable claims [who] do nonetheless commence legal action.” [71]
This is certainly not to say, on the other hand, that the Claims Administrator must afford the same deference to the absent class members’ allegations that we apply when addressing Article III issues at the Rule 23 stage. Naturally, the Claims Administrator is not bound to apply the Den-ney test or the Kohen test but must follow whatever instructions are set forth in Exhibit 4B, Exhibit 4C, and the other provisions of the parties’ detailed Settlement Agreement. In his concurrence to Deep-water Horizon I, Judge Southwick succinctly observed that Exhibits 4B and 4C created an evidentiary framework intended to “simplif[y] the claims process by making proof of loss a substitute for proof of factual causation.”[72] The parties now vigorously dispute how this evidentiary framework was intended to work. For its part, BP has argued in its subsequent submissions to the Deepwater Horizon I panel that “the Claims Administrator must *808 make a threshold determination whether the claimant has suffered loss as a result of the spill” and that under footnote 1 of Exhibit 4B this “threshold determination must be made before applying the causation criteria outlined in Exhibit 4BThe named plaintiffs hold a different view.
The evidentiary standard to be applied by the Claims Administrator, however, is not a matter of Article III standing. It is a question of interpreting the Settlement Agreement and applying it to each individual claim, and we are not called upon to address those issues in this appeal.
IV.
We turn now to examine the Rule 23 arguments raised by BP, the Allpar Objectors, the Cobb Objectors, and the BCA Objectors. In addressing Rule 23, BP and the Allpar Objectors have made nearly identical arguments. They challenge class certification and settlement approval under a variety of provisions of Rule 23 based on the same central premise discussed above in the context of Article III — that a class cannot be certified when it includes persons who have not actually been injured. The Cobb Objectors also expressly adopt BP’s arguments by reference and add only a single additional argument. According to the Cobb Objectors, the named plaintiffs did not adequately represent the class under Rule 23(a)(4) because there were no subclasses formed to represent residents of different states, particularly residents of Texas, and no subclass formed to represent those potential claimants who would have been “better off under the GCCF claims process.” As explained below, the objections of the Allpar Objectors, the Cobb Objectors, and BP have no merit.
For their part, the BCA Objectors — who refer to themselves in this way because they are represented by Brent Coon & Associates — were among the 12,-970 objectors who “failed to comply with the requirements of the Preliminary Approval Order in that they failed to provide written proof of class membership and, therefore, forfeited and waived their objections.” [73] The district court’s Preliminary Approval Order provided that any class member who wished to object to the Settlement Agreement must do so in writing by August 31, 2012, and include “written proof of class membership” with his or her objection, “such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof.”[74] As the record shows, the BCA Objectors’ objection was filed timely but was incomplete. This submission included thousands of claimants’ names listed in a chart spanning more than 150 pages but lacked even a single claimant’s proof of residency, property ownership, or business operation.[75]
On November 7, 2012, the night before the fairness hearing and two months after the deadline for filing written objections, the BCA Objectors filed a Motion for Leave to File Reply Memorandum Late *809 and in Excess of Ordinary Page Limitations. On November 8, 2012 — the morning of the fairness hearing — the district court issued an order striking this filing for untimeliness. The result of this, according to the district court’s order of December 21, 2012, was that the BCA Objectors’ challenges to class certification and settlement approval were therefore forfeited and waived. In the notice of appeal filed with this court, the BCA Objectors have once again appended a lengthy list including thousands of names listed alphabetically on a chart, but no written proof of residency, property ownership, or business operation.
The district court’s instruction to provide proof of class membership was a legitimate exercise of its discretion under Rule 23(d)(1)(A) and Rule 28(d)(1)(C) to “issue orders that[ ] .... determine the course of proceedings” and “impose conditions ... on intervenors” in a class action. As the Supreme Court recognized in Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), a district court presiding over a class action “has both the duty and the broad authority” to enter such orders to minimize “the potential for abuse” during such proceedings.[76] Although a district court’s discretion under Rule 23(d) is “not unlimited,”[77] the district court plainly acted within its discretion in finding that the BCA Objectors forfeited and waived their objections by disobeying the reasonable requirements of the Preliminary Approval Order. Moreover, in an unpublished case with equivalent facts, Feder v. Electronic Data Systems Corp., 248 Fed.Appx. 579, 580 (5th Cir.2007), we dismissed an appeal from a district court’s order on class certification and settlement approval based on the objector’s failure to “prove his membership in the class” in accordance with the district court’s reasonable documentation requirements. We see no meaningful difference between the present case and the facts of Feder. As we explained in Feder, “the right to object to settlement in a ... class action must rest on something more than the sort of bare assertions” now offered by the BCA Objectors.[78]
Accordingly, because the BCA Objectors did not substantiate their membership in this class, the district court did not abuse its discretion under Rule 23(d)(1)(A) and Rule 23(d)(1)(C) in finding that the BCA Objectors “forfeited and waived” their objections to the class certification and settlement approval.[79] We therefore will not consider the merits of their objections.
In the remaining sections, we address the arguments raised by BP, the Allpar Objectors, and the Cobb Objectors in relation to the individual provisions of Rule 23.
A.
BP, the Allpar Objectors, and (by reference) the Cobb Objectors have all challenged certification of the class under Rule 23(a)(2), which requires a demonstration that “there are questions of law or *810 fact common to the class.” These arguments rest entirely on a selective quotation from Wal-Mart Stores, Inc. v. Dukes, — U.S.-, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), and must be rejected. As the Supreme Court stated in WaV-Mart, “[c]ommonality requires the plaintiff to demonstrate that the class members ‘have suffered the same injury.’ ”[80] Based on this single sentence, it is now suggested that either the diversity of the class members’ economic injuries or the inclusion of members who “have suffered no injury at all” might preclude class certification.
When quoted in its entirety, however, the relevant passage from WaV-Mart demonstrates why both of these arguments are meritless:
Commonality requires the plaintiff to demonstrate that the class members “have suffered the same injury.” This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways — by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.[81]
As this passage shows, the Supreme Court’s use of the phrase, “the same injury,” in WaV-Mart (and decades previously in General Telephone Co. of Southwest v. Falcon, 457 U.S. 147,157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)) does not support BP’s argument. To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member’s claims. But this contention need not relate specifically to the damages component of the class members’ claims. Even an instance of injurious conduct, which would usually relate more directly to the defendant’s liability than to the claimant’s damages, may constitute “the same injury.” This is confirmed by the example given by the Supreme Court in the above passage from WaV-Mart, “discriminatory bias on the part of the same supervisor,” which is itself not a type of damages, but an instance of injurious conduct that violates Title VII. Later in the same decision, the Supreme Court stated that another type of injurious conduct on the part of the defendant, “a companywide discriminatory pay and promotion policy,” would also have satisfied the “same injury” test for commonality under Rule 23(a)(2).[82]
Accordingly, as these two examples from WaV-Mart demonstrate, the legal requirement that class members have all “suffered the same injury” can be satisfied by an instance of the defendant’s injurious conduct, even when the resulting in *811 jurious effects — the damages — are diverse. This aspect of the law is therefore unchanged since our decision in Bertulli v. Independent Association of Continental Pilots, 242 F.3d 290, 298 (5th Cir.2001), in which we upheld certification of a class action because “virtually every issue prior to damages [wa]s a common issue.” As we indicated in M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir.2012), the principal requirement of Wal-Mart is merely a single common contention that enables the class action “to generate common answers apt to drive the resolution of the litigation.” These “common answers” may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant’s injurious conduct. “[EJven a single common question will do.”[83]
The above passage from WalMart also demonstrates that district courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered “no injury at all.” As the Supreme Court explained, a “contention” regarding the class members’ injury is sufficient to satisfy Rule 23, so long as the party seeking certification can show that this contention is “common” to all the class members, is “central” to the validity of their claims, and is “capable” of classwide resolution. There is no need to resolve the merits of the common contention at the Rule 23 stage or to attempt prematurely the “determination of its truth or falsity.”[84] Although Rule 23 “does not set forth a mere pleading standard” and a court may need to “probe behind the pleadings before coming to rest on the certification,”[85] Rule 23 does not therefore become a dress rehearsal for the merits.[86] As the Supreme Court repeated last term in Amgen, “[mjerits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.”[87] In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct.
The district court’s certification of this class, therefore, did not violate Rule 23(a)(2). After reviewing expert evidence, the district court found that numerous factual and legal issues were central to the validity of all the class members’ claims. These included “[wjhether BP had a valid superseding cause defense,” “[wjhether BP used an improper well design that unreasonably heightened the risk,” “[wjhether the cement mixture was unstable, and, if so, whether BP should have prevented its use,” “[wjhether BP took appropriate and timely steps to stop the release of hydrocarbons from the well,” “whether these decisions (individually or collectively) constitute negligence, gross negligence, or willful misconduct,” “[wjhether BP is a responsible party under OPA,” “[wjhether BP could limit its liability under § 2704 of OPA,” “[wjhether punitive damages are available as a matter of law,” and whether BP “failed to mitigate the damages of the class.”[88] Neither BP nor the remaining Objectors find fault with any of the items *812 on the district court’s long list of common issues. Because “even a single common question will do” under Wal-Mart, this list was more than sufficient.[89]
Accordingly, the commonality arguments raised by BP, the Allpar Objectors, and the Cobb Objectors do not require decertification of the class. Although all of the factual and legal questions identified by the district court are more closely related to BP’s injurious conduct than to the injurious effects experienced by the class members, they nonetheless demonstrate that the class members claim to have suffered the “same injury” in the sense that WalMart used this phrase.[90] Additionally, the district court did not err by failing to determine whether the class contained individuals who have not actually suffered any injury, because this would have amounted to a determination of the truth or falsity of the parties’ contentions, rather than an evaluation of those contentions’ commonality. This was not required by Wal-Mart, and was expressly ruled out in Amgen.[91] We therefore reject the challenges raised by BP, the Allpar Objectors, and the Cobb Objectors under Rule 23(a)(2).[92]
B.
BP and the Objectors also challenge class certification and settlement approval under Rule 23(a)(4), which requires a demonstration that “the representative parties will fairly and adequately protect the interests of the class.” According to this argument, an impermissible “intraclass conflict” is created by the Claims Administrator’s interpretation of Exhibits 4B and 4C because the claimants now include some persons and entities that have suffered injuries, and other persons and entities that allegedly have not. As it has been interpreted, BP argues, the Settlement Agreement “would almost necessarily make injured members worse off than they might have been had non-injured members been excluded from the class.” According to BP, had the injured class members been represented by named plaintiffs negotiating exclusively on their behalf, they could have used their increased bargaining power during settlement negotiations to demand a more favorable formula for awarding payments.
The district court must be upheld, however, unless its decision constituted an abuse of discretion. In this case, the district court found that the named plaintiffs were “clearly adequate” to protect the interests of the class as they included “in *813 dividuals and businesses asserting each category of loss” and were assisted by adequate counsel.[93] After reviewing declarations by each of the named plaintiffs, the district court found that they had “participated in the settlement negotiations” and taken “an active role in the prosecution of this class action.”[94] After reviewing expert testimony, the district court also found that the class action was structured to assure adequate representation of all interests within the class and to prevent intraclass conflict. Finally, the district court concluded that the “uncapped compensation” available under the Settlement Agreement would “ensure that a benefit paid to one member of the class will in no way reduce or interfere with a benefit obtained by another member.” [95]
Although BP made no objection to the district court’s order certifying the class and approving the Settlement Agreement, BP asks this court to find an intraclass conflict of interest because the claimants allegedly include persons and entities that have suffered no injury. In support of this allegation, BP presents us with a series of economists’ declarations that had not been provided to the district court when the class was certified. But our previous decisions prevent us from considering this evidence for the first time on appeal.[96] Moreover, even if we were to accept BP’s contention that the class does include uninjured persons, Mims and Rodriguez would foreclose decertification of the class on this basis. As we stated in Mims in the context of the Rule 23- requirements, “[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant’s conduct.”[97] As we stated in Rodriguez, “the possibility that some [absent class members] may fail to prevail on their individual claims will not defeat class membership.”[98]
By contrast, we can consider the argument that the Cobb Objectors have raised under Rule 28(a)(4), which was passed upon by the district court. The Cobb Objectors argue that “class members from Texas, Louisiana, Alabama, Florida and Mississippi” should have been divided into their own subclasses, as should those class members who “were better off under the GCCF claims process.”
Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a “fundamental conflict,” there is no need to create subclasses to accommodate every instance of “differently weighted interests.”[99] In this case, be *814 cause the class members’ claims arise under federal law rather than state law, we are not persuaded that there is any fundamental conflict between the “differently weighted interests” of class members from different geographical regions. Although geographical criteria were indeed incorporated into the Settlement Agreement, the reason for this is both obvious and acknowledged in the Cobb Objectors’ brief. That is, “causation becomes more difficult” for a claimant to establish “the further one moves from the coast” and, in particular, the further one moves from the Macondo reservoir where the Deepwater Horizon incident occurred.
As the district court expressly found, the differences between the formulas applicable in the different geographic zones were “rationally related to the relative strengths and merits of similarly situated claims.”[100] The identification of objective, geographically-based criteria therefore easily distinguishes this case from In re Katrina Canal Breaches Litigation, 628 F.3d 185, 194 (5th Cir.2010), in which the district court improperly approved a class settlement that sought simply to “punt[] the difficult question of equitable distribution from the court to the special master, without providing any more clarity as to how fairness will be achieved.” The district court’s rigorous consideration of the expert evidence demonstrates that it did not abuse its discretion in declining to require subclasses for claimants based in Texas, Louisiana, Alabama, Florida, and Mississippi.
We also must reject the Cobb Objectors’ argument that an intraclass conflict exists between class members who were “better off under the GCCF claims process” and those who were not. Most critically, the Cobb Objectors have failed to provide any details about the cause of these claimants’ current disadvantage. In their brief, the Cobb Objectors repeat several times that some number of claimants are now “forced to meet arbitrary loss and recovery benchmarks” under the Settlement Agreement, whereas these same claimants apparently could have recovered under the GCCF without doing so. After considering substantial expert testimony, however, the district court found explicitly that the Settlement Agreement’s compensation criteria were not arbitrary, but “detailed” and “objective.”[101] Nothing in the Cobb Objectors’ arguments demonstrates that the district court’s conclusions on this question constituted an abuse of discretion. Finally, even if some claimants were practically disadvantaged by the procedures of the court-administered claims process in comparison to the procedures of the GCCF, this mechanical discrepancy is only another example of “differently weighted interests” rather than a “fundamental conflict” of interests.[102] As the Sixth and Third Circuits have held, “each class member naturally derives different amounts of utility from any class-wide settlement” based on his or her unique circumstances, but this does not put all such class members in fundamental conflict with one another.[103] Without a more detailed description of the disadvantage experienced by the group that was supposedly “better off’ under the GCCF, we cannot agree with the Cobb Objectors that the district court’s certification of this class was an abuse of discretion.
*815 c.
BP and the Objectors also argue that class certification was improper under Rule 23(b)(3), which requires that “the questions of law or fact common to class members predominate over any questions affecting only individual members.” According to BP and the Objectors, the Supreme Court’s recent decision in Comcast Corp. v. Behrend, — U.S.-, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) — which was decided three months after the district court certified the class — precludes certification under Rule 23(b)(3) in any case where the class members’ damages are not susceptible to a formula for classwide measurement.
This is a misreading of Comcast, however, which has already been rejected by three other circuits.[104] As explained in greater detail below, Comcast held that a district court errs by premising its Rule 23(b)(3) decision on a formula for classwide measurement of damages whenever the damages measured by that formula are incompatible with the class action’s theory of liability. As the court explained, “[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event.”[105] This rule may reveal an important defect in many formulas for classwide measurement of damages. But nothing in Comcast mandates a formula for classwide measurement of damages in all cases. Even after Comcast, therefore, this holding has no impact on cases such as the present one, in which predominance was based not on common issues of damages but on the numerous common issues of liability. In the present case, the district court did not include a formula for classwide measurement of damages among its extensive listing of the “common issues” that weighed in favor of certification. The district court always recognized that the class members’ damages “would have to be decided on an individual basis were the cases not being settled,” as would “the extent to which the Deepwater Horizon incident versus other factors caused a decline in the income of an individual or business.”[106] The holding of Comcast cited by BP and the Objectors, therefore, is simply inapplicable here.
As recalled above, the district court set forth a considerable list of issues that were common to all the class members’ claims. Nearly all of these issues related to either the complicated factual questions surrounding BP’s involvement in the well design, explosion, discharge of oil, and cleanup efforts or the uncertain legal questions Surrounding interpretation and application of the OPA. Accordingly, BP and the Objectors are quite correct to suggest that, although the analysis of BP’s injurious conduct gives rise to numerous common questions, the class members’ damage calculations give rise primarily to individual questions that are not capable of classwide resolution.
But this is not fatal to class certification. As we stated in Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 306 (5th Cir.2003), “[e]ven wide disparity among class members as to the amount of damages” does not preclude class certification “and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.” Accordingly, as we recognized in Steering Committee v. *816 Exxon Mobil Corp., 461 F.3d 598, 603 (5th Cir.2006), it is indeed “possible to satisfy the predominance ... requirements of Rule 23(b)(3) in a mass tort or mass accident class action” despite the particular need in such cases for individualized damages calculations. On this basis, therefore, we have previously affirmed class certification in mass accident cases,[107] as in other cases in which “virtually every issue prior to damages is a common issue.” [108]
In particular, as we explained in Madison v. Chalmette Refining, L.L.C., 637 F.3d 551, 556 (5th Cir.2011), predominance may be ensured in a mass accident case when a district court performs a sufficiently “rigorous analysis” of the means by which common and individual issues will be divided and tried. In many circuits, this has been accomplished by means of multiphase trials under Rule 23(c)(4), which permits district courts to limit class treatment to “particular issues” and reserve other issues for individual determination.[109] Accordingly, Chalmette Refining instructed district courts to consider rigorously how they plan to “adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases” of the multi-phase trial before the final decision is made to certify a class.[110]
Heeding our instruction in Chalmette Refining, therefore, the district court planned “to manage such litigation by breaking it down into separate phases, as the [district court] was prepared to do prior to the parties’ reaching a settlement.”[111] From the beginning of the litigation, the district court had anticipated that “issues relating to damages” would be “severed and tried separately” from other issues relating to liability.[112] The initial phases of this litigation would therefore have focused on common questions, including which defendants bore responsibility for the well blowout, how much oil escaped from the Macondo reservoir, who bore responsibility for the inability of the defendants to contain the flow earlier, where the oil finally came to rest, and how the efforts to disperse the oil were conducted.[113] “[A]bsent the Settlement,” the district court would then have been obliged to determine in later phases how “responsible party status would translate into compensation” under the OPA.[114]
The district court was well aware, therefore, that the class members’ damages “would have to be decided on an individual basis were the cases not being settled,” as would “the extent to which the Deepwater Horizon incident versus other factors caused a decline in the income of an individual or business.” [115] Accordingly, the district court did not list the calculation of the claimants’ damages either in its list of “common questions of fact” or in its list of “common questions of law.” [116] But even without a common means of measuring damages, in the district court’s view, these common issues nonetheless predominated over the issues unique to individual claimants. As the district court explained, “[t]he phased trial structure selected by *817 the Court prior to the parties’ arrival at a settlement agreement reflected the central importance of common issues to this case.”[117]
In rendering this conclusion, the district court did not abuse its discretion. The phased trial of common issues in this case would undoubtedly prevent the repetitious re-litigation of these common issues by each individual claimant in thousands of separate lawsuits. In accordance with our directive in Chalmette Refining, the district court also rigorously analyzed how it would adjudicate “common class issues in the first phase” and “individualized issues in other phases.”[118] As required by Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), this class action would indeed “achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, "without sacrificing procedural fairness or bringing about other undesirable results.” This class action therefore satisfies Rule 23(b)(3).
This analysis is not changed by the Supreme Court’s recent decision in Comcast. BP and the Objectors suggest that, three months after the district court certified the class and approved the settlement, Com-cast brought about a revolution in the application of Rule 23(b)(3). According to this argument, Comcast declared “that certification under Rule 23(b)(3) requires a reliable, common methodology for measuring classwide damages.” This reading is a significant distortion of Comcast, and has already been considered and rejected by the Seventh Circuit, the Sixth Circuit, and the Ninth Circuit in the months since Comcast was decided.[119]
The principal holding of Comcast was that a “model purporting to serve as evidence of damages ... must measure only those damages attributable to th[e] theory” of liability on which the class action is premised.[120] “If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).”[121] In this case, however, the district court’s inquiry into predominance was never premised on such a formula. As our three fellow circuits have already concluded, we agree that the rule of Comcast is largely irrelevant “[wjhere determinations on liability and damages have been bifurcated” in accordance with Rule 23(c)(4) and the district court has “reserved all issues concerning damages for individual determination.”[122] Even after Comcast, the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured tó establish “liability on a class-wide basis, with separate hearings to determine — if liability is established — the damages of individual class members.”[123] As explained above, this is precisely how the district cohrt planned to calculate the claimants’ damages, which “would have to be decided on an individual basis were the cases not being settled.”[124] The principal holding of Comcast therefore has no application here.
*818 As an additional matter relating to the predominance inquiry, we also address BP’s suggestion that Comcast prohibits class certification in the present case because payments are made under the Settlement Agreement’s Exhibits 4B and 4C to claimants “who have suffered no injury.” In BP’s view, payments made under such a formula are not “attributable” to the class action’s theory of liability and therefore violate Comcast. In support of this argument, BP also has cited our decision in Bell Atlantic, which stated (very similarly to Comcast) that the predominance inquiry under Rule 23(b)(3) cannot be satisfied when it is premised on a formula for elasswide measurement of damages that “is clearly inadequate.”[125]
This argument must also be rejected. Neither Comcast nor Bell Atlantic, nor any other decision that BP has identified, has suggested that predominance under Rule 23(b)(3) can be defeated by a formula for making voluntary payments under a settlement agreement. Both Comcast and Bell Atlantic addressed formulas for measuring damages in class actions that had been certified for further proceedings on the merits, and neither made any mention of a settlement agreement. The Amchem decision, moreover, which did involve a settlement class proposed for certification under Rule 23(b)(3), explained that the predominance inquiry “trains on the legal or factual questions that qualify each class member’s case as a genuine controversy, questions that preexist any settlement.”[126] Indeed, as stated elsewhere in Amchem, the existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3) concerns: “the likely difficulties in managing a class action.” Under Amchem, when “[cjonfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.”[127]
We cannot therefore conceive of why or how a formula for making voluntary payments under a settlement agreement could threaten the predominance of common questions over individual questions in litigation. Indeed, the reason that BP has identified no authority for this proposition is that it is nonsensical. A question of law or fact that is “common” under Rule 23 is one that enables the class action “to generate common answers apt to drive the resolution of the litigation.”[128] But after a class action has been settled, by definition the litigation has been resolved and the questions have been answered. For the commonality and predominance inquiries to have any meaning at all, therefore, they must be considered independently from the resolution provided in a settlement— which is precisely what Amchem instructs.[129] The arguments raised by BP *819 and the Objectors regarding Rule 23(b)(3) must therefore be rejected.[130]
D.
BP and the Objectors have also argued that, by virtue of the Class Administrator’s interpretations of Exhibits 4B and 4C, the class notice distributed to absent class members has been rendered deficient. Under Rule 23(c)(2)(B), “[t]he notice must clearly and concisely state in plain, easily understood language ... the nature of the action,” “the definition of the class certified,” “the class claims, issues, or defenses,” and other items of information relating to opting out, making objections, and the consequences of the judgment. Without tying their argument to any particular provision of Rule 23(c)(2)(B), BP and the Objectors contend that class members should have been informed of the likelihood that the prospective claimants would include uninjured persons and entities.
In our circuit, however, “[i]t is not required! ] ... that class members be made cognizant of every material fact that has taken place prior to the notice.”[131] Moreover, as we held in In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1104 (5th Cir.1977), and as at least four of our fellow circuits have agreed, the class notice must describe the proceedings in “objective, neutral terms.”[132] The contention that BP and the Objectors now suggest should have been incorporated into the class notice is neither “objective” nor “neutral” but is an adversarial position that would have been inappropriate for inclusion in a class notice.
Additionally, in Katrina Canal Breaches, in which we found a statement in a class notice to be “slightly misleading” regarding a point of Louisiana law, we held that the notice was not rendered deficient because “the statement as written [wa]s accurate in its essential point.”[133] Here, the class definition was explained in the notice to include persons and entities with *820 economic loss and property damage “arising out of the ‘Deepwater Horizon Incident.’” Accordingly, even if we were to accept that the class notice could have been improved by adding the word, “allegedly,” this minor legal ambiguity would not be enough to render the class notice deficient. The district court therefore did not abuse its discretion in finding the class notice sufficient under Rule 23(c)(2)(B).
E.
BP and the Objectors also argue that the Claims Administrator’s interpretations of Exhibits 4B and 4C preclude approval of the Settlement Agreement under Rule 23(e), which requires a district court to ensure that all class settlements are “fair, reasonable, and adequate.” Even the cases cited by BP, however, emphasize that the purpose of Rule 23(e) is “to protect the nonparty members of the class.”[134] No case cited by BP or the Objectors suggests that a district court must also safeguard the interests of the defendant, which in most settlements can protect its own interests at the negotiating table. As we stated in Newby v. Enron Corp., 394 F.3d 296, 301 (5th Cir.2004), “[t]he gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties.”[135] As is abundantly clear from the current controversy surrounding the proper interpretation of Exhibits 4B and 4C, and as the district court expressly found,[136] the Settlement Agreement was concluded in an arms-length negotiation that was free of collusion.
BP also makes a novel argument regarding our decision in Reed v. General Motors Corp., 703 F.2d 170 (5th Cir.1983), in which we explained that the application of Rule 23(e) should hinge on the analysis of six factors. These factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs’ success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[137] In the present case, the district court conducted a lengthy and detailed analysis of the proposed settlement under each of the six Reed factors.[138] In the district court’s view, none of the Reed factors counseled against approving the settlement.
BP’s argument ignores the six Reed factors altogether. Rather, BP relies on a short quotation from Reed to suggest that district courts should also ensure that settlement agreements are based on a “fair approximation of [class members’] relative entitlement.” This quotation is clearly taken out of context.[139] No other decision by our court or by any district court has ever cited Reed for such a proposition. Nor can any of the six Reed factors be easily related to the “fair approximation” analysis that BP proposes. Even attempting to analyze BP’s argument under the *821 fifth factor discussed in Reed, “the range of possible recovery,” BP has identified no reason to believe that the payments made under the Settlement Agreement fall outside the class members’ range of “possible” recovery in litigation.
F.
Last of all, BP and the Objectors have argued that, by virtue of the Class Administrator’s interpretations of Exhibits 4B and 4C, Rule 23’s implicit “ascertainability” requirement is not satisfied. As we held in Union Asset Management Holding A.G. v. Dell, Inc., 669 F.3d 632 (5th Cir.2012): “[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.”[140] According to this argument, the Claims Administrator’s two Policy Announcements render the class definition irrational and therefore violate the ascertainability requirement. However, as we found in Rodriguez, “the possibility that some [claimants] may fail to prevail on their individual claims will not defeat class membership” on the basis of the ascertainability requirement.[141] Accordingly, this final argument by BP and the Objectors is rejected. In the absence of any other arguments addressing this implicit component of Rule 23, we find that the district court did not abuse its discretion in finding that the settlement class satisfies the ascertainability requirement.
V.
To conclude, the numerous arguments that BP and the Objectors have raised with respect to each of the provisions of Rule 23 are variants, for the most part, of a single argument. Based on our previous decisions, we would reject this argument even if we could consider BP’s evidence and accept its factual premise, which we cannot. Under Mims and Rodriguez, “[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant’s conduct.”[142] The result is no different, moreover, under Article III. As we wrote in Cole, “it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered,” because we “assume ar-guendo the merits” of their claims at the Rule 23 stage.[143]
For the foregoing reasons, therefore, we AFFIRM the district court’s order of December 21, 2012.
AFFIRMED.

. See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010, 910 F.Supp.2d 891 (E.D.La.2012).

. Mat 918.

. Deepwater Horizon I, 732 F.3d at 346.

. Order of December 24, 2013 (Rec.Doc. 12055) ("Responding to Remand of Business Economic Loss Issues”).

. BP’s Notice of Appeal (Rec.Doc.12066).

. See Declaration of Andrew T. Karron, Ex. 19-R, at 2 (Rec.Doc.8963-71).

. See id., Ex. 19-V (Rec.Doc.8963-75).

. Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir.2002).

. Bonds v. Tandy, 457 F.3d 409, 411 (5th Cir.2006).

. Cole v. Gen. Motors Corp., 484 F.3d 717, 721 (5th Cir.2007).

. Quesada v. Napolitano, 701 F.3d 1080, 1084 n. 9 (5th Cir.2012); Ramchandani v. Gonzales, 434 F.3d 337, 339 n. 1 (5th Cir.2005); Theriot v. Parish of Jefferson, 185 F.3d 477, 491 n. 26 (5th Cir.1999).

. Cole, 484 F.3d at 723; see Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 310 (5th Cir.2000); In re Chicken Antitrust Litig. Am. Poultry, 669 F.2d 228, 238 (5th Cir.1982).

. Mims v. Stewart Title Guar. Co., 590 F.3d 298, 304 (5th Cir.2009).

. Amgen Inc. v. Conn. Ret. Plans & Trust Funds, -U.S. -, 133 S.Ct. 1184, 1194-95, 185 L.Ed.2d 308 (2013).

. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

. See Cole, 484 F.3d at 721-22; Rivera, 283 F.3d at 318-19.

. Lewis, 518 U.S. at 358, 116 S.Ct. 2174 (quoting Lujan, 504 U.S. at 561, 112 S.Ct. 2130) (alterations and internal quotation marks omitted).

. Id. at 395-96, 116 S.Ct. 2174 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment; joined by Ginsburg, J., and Breyer, J.).

. W. Rubenstein, A. Conte & H. Newberg, Newberg on Class Actions § 2:3 (5th Ed. 2011) ("These passive members need not make any individual showing of standing because the standing issue focuses on whether the named plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.”).

. Lewis, 518 U.S. at 395-96, 116 S.Ct. 2174 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) (alterations and internal quotation marks omitted).

. Kohen v. Pac. Inv. Mgmt. Co. LLC, 571 F.3d 672, 676-78 (7th Cir.2009).

. Steams v. Ticketmaster Corp., 655 F.3d 1013, 1020-21 (9th Cir.2011) ("On the contrary, our law keys on the representative party, not all of the class members, and has done so for many years.... In a class action, standing is satisfied if at least one named plaintiff meets the requirements....” (internal quotation marks and citations omitted)).

. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 306-07 (3d Cir.1998) ("There is also ample evidence that each named party has suffered an ‘injury in fact’.... Thus, the named plaintiffs satisfy Article III. The absentee class members are not required to make a similar showing. ...").

. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1197-98 (10th Cir.2010) (“First, only named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent *801 threat of being injured in the future.... '[A] class will often include persons who have not been injured by the defendant's conduct.... Such a possibility or indeed inevitability does not preclude class certification.’ ” (quoting Kohen, 571 F.3d at 677)).

. Kohen, 571 F.3d at 677.

. Denney, 443 F.3d at 263-64 (citations omitted).

. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir.2010) (citing Denney, 443 F.3d at 263-64).

. Adashunas v. Negley, 626 F.2d 600, 603 (7th Cir.1980) (“In order to state a class action claim upon which relief can be granted, there must be alleged at the minimum (1) a reasonably defined class of plaintiffs, (2) all of whom have suffered a constitutional or statutory violation (3) inflicted by the defendants.”).

. Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 594 (9th Cir.2012) (citing Denney, 443 F.3d at 263-64).

. See Kohen, 571 F.3d at 677; Steams, 655 F.3d at 1020-21.

. No clear guidance is provided by the Supreme Court's decision with the greatest relevance to Article III questions arising due to a class settlement, Amchem Products, Inc. v. Windsor, 521 U.S. 591, 612-13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Supreme Court implied in that case that a district court could not approve a class settlement containing class members who had not yet manifested any health problems from their past exposures to asbestos. If these "exposure-only” plaintiffs’ claims were not yet ripe, the Supreme Court suggested, then their inclusion in a class action would not be "in keeping with Article III constraints.” Amchem, 521 U.S. at 612-13, 117 S.Ct. 2231. The Supreme Court did not ultimately reach the ripeness question, however, because the asbestos-litigation class failed under a Rule 23 inquiry that the Supreme Court considered "logically antecedent to the existence of any Article III issues.” Id. It is therefore unclear how the Supreme Court would eventually have approached its ripeness determination.

. See Mims, 590 F.3d at 308.

. See id. at 302.

. See Deepwater Horizon I, 732 F.3d at 340-42, 344 & n. 12 (describing the "judicial role to ensure that class definitions comply with statutory and constitutional strictures” (emphasis added)).

. Id. at 340-42 (quoting Adashunas, 626 F.2d at 603, and Denney, 443 F.3d at 263-64). Judge Clement also cited frequently to Judge Jordan's dissent in Sullivan v. DB Investments, Inc., 667 F.3d 273, 346 (3d Cir.2011) (en banc) (Jordan, J., dissenting), which proposed a test that could be applied to "a class complaint requesting relief” without looking to any additional items of proof.

. Deepwater Horizon I, Til F.3d at 340-42.

. See id. at 343.

. Id. at 340-42.

. See Kohen, 571 F.3d at 677.

. See In re Oil Spill, 910 F.Supp.2d at 902 (citing Amended Class Action Complaint (Rec. Doc.6412)).

. Amended Class Action Complaint 6-13 (Rec.Doc.6412) (emphasis added).

. Id.

. Cole, 484 F.3d at 723 (emphasis added).

. Id. (quoting Parker v. District of Columbia, 478 F.3d 370, 377 (D.C.Cir.2007) (internal quotation marks omitted)).

. See Kohen, 571 F.3d at 677.

. See In re Oil Spill, 910 F.Supp.2d at 965-67.

. Id. (emphasis added).

. Amended Class Action Complaint 108-10 (Rec.Doc.6412).

. Deepwater Horizon I, 732 F.3d at 343.

. Denney, 443 F.3d at 263.

. Deepwater Horizon I, 732 F.3d at 340-42.

. Cole, 484 F.3d at 721-23 (emphasis added) (quoting Parker, 478 F.3d at 377 (internal quotation marks omitted)).

. Under the Rules Enabling Act, 28 U.S.C. § 2072(b), "[t]he Federal Rules of Civil Procedure cannot work as substantive law.” Klier v. ElfAtochem N. Am., Inc., 658 F.3d 468, 474 (5th Cir.2011). In this case, the substantive law is neither Rule 23 nor any other Federal Rule of Civil Procedure, but the OPA and federal maritime law, under which the named plaintiffs raised a variety of different claims in the Amended Class Action Complaint. Despite making several references to the Rules Enabling Act in their supplemental briefs, neither BP nor the Objectors have contested this basic point. The Rules Enabling Act therefore is not violated. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 406-08, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) (plurality opinion) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties’ legal rights and duties intact and the rules of decision unchanged.”); id. at 431-36, 130 S.Ct. 1431 (Stevens, J., concurring in part and concurring in the judgment) (agreeing that Rule 23 does not violate the Rules Enabling Act so long as no substantive state law is displaced in a diversity case); Sullivan v. DB Invs., Inc., 667 F.3d 273, 312-13 (3d Cir.2011) (en banc) (concluding that a district court’s “approval *805 of the parties’ settlement should not be considered a recognition or expansion of substantive rights” under the Rules Enabling Act).

. Lewis v. Casey, 518 U.S. at 358, 116 S.Ct. 2174 (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130).

. The record contains an e-mail message from Judge Barbier documenting a "discussion” on December 12, 2012, during which it was confirmed that "Counsel for BP and the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims,” as set forth in the second Policy Announcement. See Declaration of Andrew T. Karron, Ex. 19-V (Rec.Doc.8963-75). But no party has suggested that any of the expert declarations that have been presented to this court were considered by Judge Barbier either during this "discussion” or at any time previously. In fact, given that BP and the named plaintiffs were both still in agreement with the Claims Administrator on that date, it seems more likely that the expert declarations were not shared with Judge Barbier.

. Cole, 484 F.3d at 721; Pederson v. La. State Univ., 213 F.3d 858, 869 (5th Cir.2000).

. Quesada, 701 F.3d at 1084 n. 9; Ramchandani, 434 F.3d at 339 n. 1; Theriot, 185 F.3d at 491 n. 26.

. Wal-Mart Stores, Inc. v. Dukes, - U.S. -, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

. See Mims, 590 F.3d at 302, 308.

. Denney, 443 F.3d at 263-64.

. Deepwater Horizon I, 732 F.3d at 340-42.

. See Cole, 484 F.3d at 721-23 (emphasis added) (quoting Parker, 478 F.3d at 377 (internal quotation marks omitted)).

. In re Oil Spill, 910 F.Supp.2d at 924.

. Scheduling Order of October 6, 2010, at 3 (Rec.Doc.473).

. This court has previously "approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan — including bifurcation” of "class-wide liability issues” and issues of individual damages. Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 603 (5th Cir.2006) (analyzing Watson v. Shell Oil Co., 979 F.2d 1014, 1017-18, 1024 & n. 9 (5th Cir.1992)).

. See Butler v. Sears, Roebuck & Co., 727 F.3d 796, 800 (7th Cir.2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine — if liability is established — the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.”).

. Defs.’ Memorandum of October 6, 2010, at 6, 8 (Rec.Doc.488).

. Lewis, 518 U.S. at 358, 116 S.Ct. 2174 (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130).

. Kincade v. Gen. Tire & Rubber Co., 635 F.2d 501, 507 (5th Cir.1981) (quoting Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir.1977)); see also Smith v. Crystian, 91 Fed.Appx. 952, 955 (5th Cir.2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement” and affirming both class certification and settlement approval (internal citation and quotation marks omitted)).

. In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 243-44 (2d Cir.2012).

. Sullivan, 667 F.3d at 310.

. Deepwater Horizon I, 732 F.3d at 346 (Southwick, J., concurring in Parts I and III of the majority opinion).

. See In re Oil Spill, 910 F.Supp.2d at 936 (citing Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012 (Rec. Doc.8001)).

. Id. at 935-36 (internal quotation marks omitted).

. See id. (citing Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012 (Rec.Doc.8001)); see also Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012, Ex. L, at 3-538 (Rec.Doc. 8001-18) (identifying each one of the 11,245 objectors represented by Brent Coon & Associates as lacking "Standing Proof”); Plaintiffs Represented by Brent Coon & Associates' Motion in Opposition and Objections to the Economic Class Settlement, Ex. 1 (Rec.Doc.7224-2).

.Gulf Oil Co., 452 U.S. at 100, 101 S.Ct. 2193; see also Moulton v. U.S. Steel Corp., 581 F.3d 344, 353 (6th Cir.2009) (“Rule 23 gives the district court broad discretion in handling class actions, authorizing ‘orders that ... impose conditions on the representative parties or on interveners.’ ”) (alteration in original); Williams v. Chartwell Fin. Servs., Ltd., 204 F.3d 748, 759 (7th Cir.2000).

. Gulf Oil Co., 452 U.S. at 100, 101 S.Ct. 2193.

. See Feder, 248 Fed.Appx. at 581; see also Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 639 (5th Cir.2012) (holding that objectors had standing to object specifically because they had "complied” with the requirements of the settlement notice).

. See In re Oil Spill, 910 F.Supp.2d at 936.

.Wal-Mart, 131 S.Ct. at 2551 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

.Wal-Mart, 131 S.Ct. at 2551 (citation omitted) (quoting Falcon, 457 U.S. at 157, 102 S.Ct. 2364).

.Id. at 2556.

. Id. (alterations and internal quotation marks omitted).

. See id. at 2551.

. See id. (quoting Falcon, 457 U.S. at 160, 102 S.Ct. 2364).

. In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 851-52 (6th Cir.2013); Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 811 (7th Cir.2012).

. Amgen, 133 S.Ct. at 1195.

. In re Oil Spill, 910 F.Supp.2d at 922-23.

. See Wal-Mart, 131 S.Ct. at 2556 (alterations and internal quotation marks omitted).

. Id. at 2551 (quoting Falcon, 457 U.S. at 157, 102 S.Ct. 2364).

. Amgen, 133 S.Ct. at 1194-95.

. In a one-sentence footnote in its initial brief, BP adds that “the claims of the representative parties are no longer typical of the claims of the class” in light of the Claims Administrator's interpretations and directs our attention to the Supreme Court's statement that “[t]he commonality and typicality requirements of Rule 23(a) tend to merge.” See Wal-Mart, 131 S.Ct. at 2551 n. 5 (alteration in original) (internal quotation marks omitted). The Allpar Objectors also have not differentiated in any way between their commonality argument under Rule 23(a)(2) and their typicality argument under Rule 23(a)(3). To the extent that the references to "typicality” by BP and the Allpar Objectors constitute a separate argument under Rule 23(a)(3), that argument is rejected. For the same reasons given with respect to their commonality argument, neither BP nor the Allpar Objectors have demonstrated that the district court abused its discretion in finding that "[tjypicality is satisfied here, as the class representatives — like all class members — allege economic and/or property damage stemming directly from the Deepwater Horizon spill.” In re Oil Spill, 910 F.Supp.2d at 915.

. In re Oil Spill, 910 F.Supp.2d at 916-17.

. Id. at 916 (quoting Stott v. Capital Fin. Servs., Inc., 277 F.R.D. 316, 325 (N.D.Tex.2011)).

. Id. at 918.

. Quesada, 701 F.3d at 1084 n. 9; Ramchandani, 434 F.3d at 339 n. 1; Theriot, 185 F.3d at 491 n. 26.

. Mims, 590 F.3d at 308.

. Rodriguez, 695 F.3d at 370 (internal quotation marks omitted).

. Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 186 (3d Cir.2012) (quoting Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 429 (6th Cir.2012)); see also In re Literary Worlcs in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir.2011); Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir.2010) (“For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental.” (internal quotation marks omitted)); Rodriguez v. W. Publ’g Corp., 563 F.3d 948, 959 (9th Cir.2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequa-cy_” (emphasis added)); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir.2003) ("Significantly, the existence of minor conflicts alone will not defeat a party’s claim to class certification: the con *814 flict must be a 'fundamental' one going to the specific issues in controversy.”).

. See In re Oil Spill, 910 F.Supp.2d at 917-18.

. Id.

. Dewey, 681 F.3d at 186 (quoting Gooch, 672 F.3d at 429).

. See id.

. See Butler, 727 F.3d at 800; In re Whirlpool Corp., 722 F.3d at 860; Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir.2013).

. Comcast Corp. v. Behrend, -U.S.-, 133 S.Ct. 1426, 1435, 185 L.Ed.2d 515 (2013) (quoting Fed. Judicial Ctr., Reference Manual on Scientific Evidence 432 (3d ed. 2011) (emphasis omitted)).

. In re Oil Spill, 910 F.Supp.2d at 924.

. See Steering Comm., 461 F.3d at 603 (analyzing Watson v. Shell Oil Co., 979 F.2d 1014, 1022-23 (5th Cir.1992)).

. Bertulli, 242 F.3d at 298.

. Butler, 727 F.3d at 800; In re Whirlpool Corp., 722 F.3d at 860; Leyva, 716 F.3d at 514.

. Chalmette Ref., 637 F.3d at 556.

. In re Oil Spill, 910 F.Supp.2d at 932.

. Scheduling Order of October 6, 2010, at 3 (Rec.Doc.473).

. In re Oil Spill, 910 F.Supp.2d at 921-23.

. Id. at 924.

. Id.

. Id. at 921-23.

. Id. at 921.

. See Chalmette Ref., 637 F.3d at 556.

. See Butler, 727 F.3d at 800; In re Whirlpool Corp., 722 F.3d at 860; Leyva, 716 F.3d at 514.

. Comcast Corp., 133 S.Ct. at 1433.

. Id.

. In re Whirlpool Corp., 722 F.3d at 860; see also Butler, 727 F.3d at 800; Leyva, 716 F.3d at 514.

. Butler, 727 F.3d at 800; see also In re Whirlpool Corp., 722 F.3d at 860; Leyva, 716 F.3d at 514.

. In re Oil Spill, 910 F,Supp.2d at 924.

. Bell Atl., 339 F.3d at 307.

. Amchem, 521 U.S. at 623, 117 S.Ct. 2231 (emphasis added).

. Id. at 620, 117 S.Ct. 2231.

. Wal-Mart, 131 S.Ct. at 2551 (emphasis omitted); M.D., 675 F.3d at 840.

. Amchem, 521 U.S. at 623, 117 S.Ct. 2231 (explaining that the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.”). It is worth recalling here that even though the settlement class in Amchem failed the predominance inquiry, this was not due to any feature of the settlement. This was because, rather, the district court had impermis-sibly taken into consideration factors such as the class members’ "interest in receiving prompt and fair compensation,” which was a factor unrelated to the case or controversy that they hypothetically would have litigated had the class action not been settled. Such factors are external to the predominance inquiry. See id.

.Neither the Cobb Objectors nor the Allpar Objectors have made any arguments under the second requirement of Rule 23(b)(3), that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” BP has raised this argument but has not differentiated in any meaningful way between its "predominance” argument and “superiority” argument. Citing Amchem, BP argues essentially that the class action would not be superior to individual lawsuits because a class action only satisfies Rule 23(b)(3) when it "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.” Amchem, 521 U.S. at 615, 117 S.Ct. 2231. As we already have decided in the context of the predominance inquiry, however, the district court did not abuse its discretion in finding that this requirement was met in this case. See In re Oil Spill, 910 F.Supp.2d at 928. Accordingly, BP's argument as to superiority under Rule 23(b)(3) is also rejected.

. In re Corrugated Container Antitrust Litig., 611 F.2d 86, 88 (5th Cir.1980) (quoting In re Nissan Motor Corp., Antitrust Litig., 552 F.2d 1088, 1104 (5th Cir.1977)) (original alterations, quotation marks, and parentheses omitted).

. See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir.2007) (“Rule 23(e) does not require the notice to set forth every ground on which class members might object to the settlement....”); see also Rodriguez v. W. Publ’g Corp., 563 F.3d 948, 962-63 & n. 7 (9th Cir.2009) (requiring the class notice to be "scrupulously neutral”); In re Traffic Exec. Ass'n E. R.R., 627 F.2d 631, 634 (2d Cir.1980) (same); Grunin v. Int’l House of Pancakes, 513 F.2d 114, 122 (8th Cir.1975) (same).

. See In re Katrina Canal Breaches Litig., 628 F.3d 185, 199 (5th Cir.2010).

. Wilson v. Sw. Airlines, Inc., 880 F.2d 807, 818 (5th Cir.1989) (quoting Piambino v. Bailey, 610 F.2d 1306, 1327 (5th Cir.1980)); see also All Plaintiffs v. All Defendants, 645 F.3d 329, 334 (5th Cir.2011) (citing Strong v. BellSouth Telecomm’cns, Inc., 137 F.3d 844, 849 (5th Cir.1998)).

. Newby, 394 F.3d at 301 (internal quotation marks omitted).

. In re Oil Spill, 910 F.Supp.2d at 931.

. Reed, 703 F.2d at 172.

. In re Oil Spill, 910 F.Supp.2d at 931-39.

. See Reed, 703 F.2d at 175.

. Dell, 669 F.3d at 639 (5th Cir.2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir.1970) (per curiam)).

. Rodriguez, 695 F.3d at 370 (internal quotation marks omitted).

. Mims, 590 F.3d at 308; see Rodriguez, 695 F.3d at 370 ("[T]he possibility that some [absent class members] may fail to prevail on their individual claims will not defeat class membership.”).

.Cole, 484 F.3d at 723 (emphasis added) (quoting Parker, 478 F.3d at 377 (internal quotation marks omitted)).