# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2019

Lyle W. Cayce
Clerk

No. 18-30771

CLAIMANT ID 100241914,

      Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5502

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:*

This appeal concerns a Business Economic Loss claim under the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"). The claimant is Johnston-Tombigbee Furniture Manufacturing Company, Inc. ("Claimant"), a furniture manufacturer in Columbus, Mississippi, a location that places it in Zone D, the furthest zone

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

from the Gulf of Mexico and the Zone with the most stringent requirements for establishing causation under the Settlement Agreement. The Court Supervised Settlement Program's ("Settlement Program") Claims Administrator denied Claimant's economic loss claim, finding it could not meet the heightened causation showing required of Zone D claims. After re-review and reconsideration were denied, an appeal panel affirmed denial of Claimant's economic loss claim, and the district court declined to exercise its discretionary review over that decision. Because the district court did not abuse its discretion in denying discretionary review, we AFFIRM.

## I

BP entered the court-supervised Settlement Agreement with a class of plaintiffs who suffered losses caused by the April 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[1] The basic process provided by the Settlement Agreement for claimants to submit claims is as follows: A claimant submits its claim to the Claims Administrator, who determines its validity. That determination is subject to review by an administrative review panel, as well as to re-review and reconsideration by the Claims Administrator. A party unsatisfied with the resolution of a claim may then seek discretionary review in the federal district court that supervises the Settlement Program. The district court's determination is subject to review in this court.

Exhibit 4B of the Settlement Agreement sets out the causation requirements for certain claims brought under the Settlement Program. Claimant is located in Zone D, the furthest zone from the Gulf of Mexico. The Settlement Agreement provides that Zone D claims are not entitled to a

---

[1] We have previously described the origins of the Settlement Program and Settlement Agreement, and we need not repeat the details here. *See, e.g., In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010,* 910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

presumption of causation, and Zone D claimants must instead demonstrate causation through one of several avenues. Here, Claimant pursued the "Decline-Only Revenue Pattern." The third prong of the Decline-Only Revenue Pattern is the "Customer Mix Test," which Exhibit 4B specifies requires detailed documentation to show a decline in business from customers located closer to the Gulf of Mexico or otherwise "non-local customers." The Claims Administrator's Policy 345 provides additional guidance on how the Customer Mix Test applies.

We recently described the exacting standards set out for Zone D claimants in the Decline-Only Revenue Pattern, the Customer Mix Test, and Policy 345, as follows:

> Under [the Decline-Only Revenue Pattern], claimants must satisfy three requirements: 1) a decline of an aggregate of fifteen percent or more in total revenues over a period of three consecutive months in 2010, after the spill, compared to the same months in the pre-spill period selected by the claimant; 2) specific documentation identifying factors outside the claimant's control that prevented the recovery of revenues in 2011, such as the entry of a competitor; and 3) the Customer Mix Test, the requirement at issue in this appeal.

> Under the Customer Mix Test, claimants located in a Zone some distance from the Gulf can show causation by the oil spill if they can show they lost a specified amount of revenue from customers located near the Gulf. The test requires that claimants demonstrate proof of a decline of ten percent in the share of total revenue generated by either non-local customers or customers located in Zones A, B, or C, which are located closer to the Gulf of Mexico. The decline must occur over the same time period used for analyzing total revenue decline: the three-month period in 2010, after the spill, compared to the three-month period in 2009, before the spill. The claimant must submit business documentation reflecting customers'

locations and sales associated with those customers, and the Claims Administrator uses mapping software to verify each customer's Economic Loss Zone and distance from the claimant.

The Claims Administrator's Approved Policy 345 governs the application of the Customer Mix Test. It provides that Exhibit 4B places the burden on the claimant to demonstrate that it has satisfied the requirements of the test. The policy states that, though it may be difficult or even impossible for some claimants to satisfy this test, "the Claims Administrator interprets the Settlement Agreement's documentation requirements as mandatory," and the policy further notes that "[t]he Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements."

Policy 345 also provides that if customer addresses cannot be verified by the Settlement Program, the Zone of such customers, and their distance from the claimant, will be considered "unknown." The revenue generated from those "unknown" customers weighs against a claimant attempting to show the post-spill revenue decline required for the Customer Mix Test. More particularly, revenue from those customers is excluded from the revenue during the pre-spill period and included in the revenue during the post-spill period. The district court supervising the Settlement Program has explained that the purpose of this unfavorable treatment is to prevent "claimants from benefitting from their failure to provide complete customer mix data."

*Claimant Id 100261758 v. BP Expl. & Prod., Inc.*, No. 18-30173, 2019 WL 507588, at *2–3 (5th Cir. Feb. 8, 2019) (citations omitted).

Also relevant to this appeal is Policy 218. Policy 218 provides for the reallocation of a business's revenues from "13-period revenue and expense statements into a twelve month year by allocating each period's revenue and expense items into their respective months."

Claimant submitted documentation that it maintains entitled it to pass the Customer Mix Test. Claimant's submission included two key sets of documents: (1) Claimant's profit and loss statements ("P&L") over the course of several years, and (2) documentation, including customer lists and sales logs ("Customer Mix Data"), aimed specifically at passing the Customer Mix Test. The P&Ls were financial statements generated in the ordinary course of business and therefore followed the financial accounting method of Claimant's choosing—the "4-4-5" method. The 4-4-5 financials submitted do not correspond exactly with calendar months because such a financial accounting method divides a year into four quarters, each of which is then divided into two four-week periods and one five-week period.

The Claims Administrator denied Claimant's economic loss claim based on a finding that it had "not provided documents sufficient to establish that [its] lost revenue occurred as a result of the Spill, in accordance with Exhibit 4B of the Settlement Agreement." Claimant then sought re-review of its claim, which was denied. Finally, Claimant requested reconsideration, submitting updated Customer Mix Data, including documentation that corrected various incomplete addresses that had been treated as "unknown" under Policy 345. The Claims Administrator denied reconsideration. After these three successive denials, Claimant sought review by the Appeal Panel, contending that it had submitted enough documentation to pass the Customer Mix Test and alleging the Claims Administrator made several mistakes in processing its claim, including improperly applying Policy 218 and incorrectly mapping several customer locations.

In light of Claimant's arguments, the Appeal Panel submitted a "Request for Information / Summary of Review" to the Claims Administrator, seeking clarification of the basis for the determination. In response, the Claims Administrator explained that, although certain mapping mistakes had been

made, "[u]pon updating the Customer Mix Test and applying Policy 345 v.3, the Claimant still does not meet the requirements of the Customer Mix Test, and the claim would still result in a Causation Denial." Moreover, the Claims Administrator explained that "after utilizing the updated information, large variances remained between the total monthly revenue amounts reportered per the P&Ls and the Customer Mix Test data, which were treated as 'unknown' pursuant to Policy 345 v.3." Finally, the Claims Administrator conceded that Policy 218 should have been applied from the outset but was not applied until reconsideration review. However, according to the Claims Administrator, "Policy 218 is applicable to all non-calendar month basis P&Ls in order to fairly evaluate a claim consistent with the terms of the Settlement Agreement," and was applied in this case because "Claimant's 12-Period P&Ls were prepared using a 4-4-5 account method, i.e. a non-calendar month basis."

After receiving this additional explanation from the Claims Administrator, the Appeal Panel affirmed, finding that Policy 218 was correctly applied to Claimant's documentation, and that "[t]he results [were] not the result of applying Policy 218," and instead reflected the fact that "Claimant has not provided a complete listing of all customer transactions." Thus, the Appeal Panel determined that "[t]here is no basis to disturb the Settlement Program's application of the Customer Mix Test."

The district court declined to exercise discretionary review over this determination, and Claimant appeals that decision.

## II

We review the district court's denial of discretionary review for abuse of discretion. *See Claimant ID 100212278 v. BP Expl. & Prod. Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (citation omitted). "We generally assess whether the district court abused its discretion by looking to 'whether the decision not reviewed by the district court actually contradicted or misapplied the

Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement.'" *Id.* (quoting *Holmes Motors, Inc. v. BP Expl. & Prod.*, 829 F.3d 313, 315 (5th Cir. 2016)). Nonetheless, the district court need not "grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement," as "[i]t is not an abuse of discretion to deny a request for review that involves no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raises the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Id.* (cleaned up). One indicator of abuse of discretion is whether "a request for review . . . raises a recurring issue on which the Appeal Panels are split if the resolution of the question will substantially impact the administration of the [Settlement] Agreement." *Id.* (cleaned up).

## III

Claimant argues on appeal that the Claims Administrator misapplied Policy 345 to its claim, that the way Claimant's administrative proceedings were handled violated its due process rights, and that the Claims Administrator should not have applied Policy 218. We take each argument in turn and conclude that Claimant's contentions raise, at most, issues regarding "the correctness of a discretionary administrative decision in the fact of a single . . . case." *Claimant ID 100212278*, 848 F.3d at 410 (cleaned up). Thus, Claimant has not shown the district court abused its discretion in denying review.

## A

Claimant's contention that the Claims Administrator misapplied Policy 345 does not challenge the Claims Administrator's interpretation of that policy or the Settlement Agreement, and instead is a conclusory challenge to the result in this case. In fact, it is not clear exactly how Claimant contends the Claims Administrator misapplied the policy. Although the Claims

Administrator initially incorrectly mapped several customer locations, that error was corrected in the response to the request for information from the Appeal Panel, at which point the Claims Administrator concluded that "[u]pon updating the Customer Mix Analysis and applying Policy 345 v.3, the Claimant still does not meet the requirements of the Customer Mix Test, and the claim would still result in a Causation Denial." Claimant does not challenge this determination other than to point out the fact that the Claims Administrator erred in its earlier calculation and to argue that its change of rationale at this stage was unfair. Setting aside the procedural argument, which we analyze *infra* in Section III.B, we fail to see any basis for a finding that the district court abused its discretion, because Claimant's arguments appear to "merely challenge[] 'the correctness of a discretionary administrative decision in the facts of a single claimant's case.'" *Claimant ID 100028922 v. BP Expl. & Prod., Inc.*, 710 F. App'x 184, 187 (5th Cir. 2017) (quoting *Claimant ID 100212278*, 848 F.3d at 410).

## B

Claimant's second argument—that its due process rights were violated because the Appeal Panel sought and received additional information, including an updated Customer Mix analysis from the Claims Administrator on appeal—similarly fails. Rule 13(f) of the Rules Governing the Appeals Process allows the Appeal Panel to request a Summary of Review from the Claims Administrator, which ordinarily provides the Appeal Panel with "the basis for the determination(s) made by the Claims Administrator." *Rules Governing the Appeals Process rule 13(f)*.[2] Claimant principally takes issue with the Appeal Panel's failure to remand in light of the mistakes the Claims

---

[2] A copy of the Rules Governing the Appeals Process is available at http://www.deepwaterhorizoneconomicsettlement.com/docs/Rules_Governing_the_Appeals_Process_-_Final.pdf.

Administrator had made earlier in the process because a remand "would have permitted the Claimant to respond to the Claims Administrator's issues." However, Claimant was given the opportunity to respond to the Summary of Review under Rule 13(f), and in fact submitted a response arguing the Claims Administrator was wrong. Because Claimant was given a full opportunity to respond to the Claims Administrator's updated analysis, we do not believe Claimant's concerns about the process it was afforded justify another layer of review in this court. *Cf. Claimant Id 100261758*, 2019 WL 507588, at *5 (affirming denial of review despite argument that claimant should have been given additional opportunities to provide compliant data).

## C

Claimant's final argument centers around the application of Policy 218. Claimant first contends that the policy should not apply to its claim because, on its face, the policy only applies to 13-period accounting methodologies, whereas Claimant utilizes a "4-4-5" method, which is a type of 12-period method. Second, Claimant argues that Policy 218 cannot apply to the Customer Mix Test because "it was not created nor intended for use in applying the Customer Mix Test" and because it constitutes impermissible "moving and smoothing" of revenues. Finally, Claimant argues that use of Policy 218 is especially egregious here given that, according to Claimant, it would pass the Customer Mix Test but for the reallocation of its revenues into calendar months.

We recently approved the use of Policy 218 to convert 4-4-5 financials into calendar-month financials for proof of causation under Exhibit 4B of the Settlement Agreement. In *BP Expl. & Prod., Inc. v. Claimant ID 100262795*, No. 18-30273, 2019 WL 113684, at *2–3 (5th Cir. Jan. 4, 2019), we held that Policy 218 applied to a showing of causation under the V-Shaped Revenue Pattern, another test available to Zone D claimants under Exhibit 4B. We

reasoned that conversion to calendar-month financials was required by the Settlement Agreement, as "the Settlement Agreement as a whole indicates that 'month,' when referred to in the V-test, unambiguously means calendar month," because the V-test explicitly references specific months. *Id.* at *2. Because a claimant under the V-test must "submit 'monthly and annual profit and loss statements . . . or alternate source documents establishing monthly revenues and expenses," conversion to calendar months was necessary for analyzing the V-test. *Id.* This reasoning applies equally to the Customer Mix Test at issue here because Exhibit 4B uses the same specific month identifiers (referencing submission of documents for "May-December 2010 as selected by the claimant") as in the V-test and describes documents in terms of month-to-month revenues. The Settlement Agreement therefore clearly contemplates that any non-calendar-month financials be converted before application of the Customer Mix Test.

We also recently endorsed the denial of a claim under the Customer Mix Test based on a comparison of P&L statements and Customer Mix Data. In *Claimant ID 100187576 v. BP Expl. & Prod., Inc.*, No. 18-30491, 2019 WL 476080, at *2–3 (5th Cir. Feb. 6, 2019), the "Settlement Program accountants noted that [claimant's] customer mix data could not be completely reconciled with its P & L statements," and "treat[ed] those variances adversely." *Id.* at *2. In that case, the Appeal Panel explained that "Customer Mix data that does not match the P and Ls is considered unknown and treated in a manner adverse to the claimant." *Id.* (quotations omitted). We rejected the claimant's contention on appeal that "the Administrator violated the Settlement Agreement by adversely classifying the variances between [the claimant's] customer mix data and its P & L statements." *Id.* at *2; *see also Claimant Id 100227611 v. BP Expl. & Prod., Inc.*, No. 18-30396, 2018 WL 6261854, at *3 (5th Cir. Nov. 28, 2018) ("The only way to reasonably interpret the customer

mix test is that it requires the claims administrator to compare the claimant's 'total revenue' with its subset of revenue 'generated by customers located in' the affected areas and ask whether the latter—as a 'share of the total'— declined 10 percent over the relevant period."). We agree with this analysis and conclude that adverse treatment based on discrepancies between P&Ls and Customer Mix Data is permissible under the Settlement Agreement.

The foregoing discussion resolves Claimant's arguments surrounding Policy 218: The policy applies to its 4-4-5 financials and applies to the Customer Mix Test. *See Claimant ID 100262795*, 2019 WL 113684, at *2–3. To the extent Claimant challenges the comparison of P&L data to the Customer Mix Data it submitted and treating discrepancies between the two data sets adversely to Claimant, that argument also fails.[3] *See Claimant ID 100187576*, 2019 WL 476080, at *2–3.

**\*\*\***

For these reasons, the judgment of the district court is AFFIRMED.

---

[3] We also reject Claimant's contention that application of Policy 218 results in impermissible "moving and smoothing" of revenue data. The precedent Claimant cites in support of that contention is inapposite, as it relates to Industry-Specific Methodologies for calculating compensation. *See In re Deepwater Horizon*, 858 F.3d 298, 300–01 (5th Cir. 2017). We instead apply the same reasoning as *Claimant ID 100262795*, 2019 WL 113684, at *2–3, as discussed *supra*.